CHAMBERS et ux.

v.

GIRLS HAVEN OF ORANGE.

No. 4912.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 3, 1953.

Rehearing Denied March 25, 1954.

Dave H. O'Fiel, Beaumont, for appellant.

Fred Trimble, Orange, for appellee.

WALKER, Justice.

Margaret Chambers is the minor daughter of the appellant George N. Chambers. On August 9, 1951 the trial court rendered a judgment which: (a) adjudged Margaret Chambers to be a dependent and neglected child; (b) adjudged "that the care and custody of—Margaret Chambers be—awarded to Girls Haven of Orange, Texas subject at all times to the further order of this court;" and (c) adjudged that "George N. Chambers, the father of—Margaret Chambers shall henceforth have no right to the custody, services or earnings of said child until further ordered by the court."

This judgment was recorded in the minutes of the trial court.

When this judgment was rendered, the mother of Margaret Chambers was dead and George N. Chambers was unmarried. The judgment states that Margaret Chambers was 8 years old.

In the findings of fact filed by the trial court in the cause under review, Girls Haven of Orange, Texas is described as "a local Texas corporation established for the care of dependent, neglected and needy children." Margaret Chambers was under the care of this institution when the judgment of 1951 was rendered; and after the rendition of this judgment she remained in the custody and under the care of this institution until the time in April, 1952 now to be mentioned.

In finding 4 of the trial court's findings it is stated that on April 12, 1952, the judge of that court "made a verbal order relieving Girls Haven of the custody of Margaret L. Chambers, and transferring her custody to a married couple, who resided outside of the State of Texas, for a trial period prior to adoption of Margaret by said married couple. Said order of the district judge was made verbally in open court, but was not reduced to writing as adoption was contemplated."

There is no evidence that any adoption proceeding has been begun. The proceedings at which the verbal order of April 12, 1952, were made were not such as are prescribed in Article 46a., Vernon's Ann. Tex.Stats.

The supplemental findings of the trial court add this concerning the order of April 12, 1952: "It affirmatively appears that the same was never reduced to writing or carried into the minutes of this court."

In finding 7 it is stated that said judge "gave Margaret to this married couple on April 12, 1952."

The only evidence concerning the character and the terms of the verbal order of April 12, 1952 is in the testimony of the judge who passed this order, who had recused himself and who did not preside over the trial. According to this witness, the proceedings were informal and oral, and it is unnecessary to describe them; the validity of the order has not been questioned by the parties. The witness said that Girls Haven, acting through its Board of Directors, recommended to him that custody be given to the persons referred to above in the quotations from findings 4, 7 and 8; and pursuant to this recommendation the order was passed.

The witness described the terms of the order as follows: (a) "—sometime the latter part of April or May, I granted permission and changed the custody of the child from Girls Haven * * * the child Nell Chambers (he refers to Margaret) from Girls Haven to the place outside the State of Texas;" (b) "—then about a week after I had made this order changing her custody, the custody of the child—"; (c) "the last time that I saw Nell was on the date I changed the order and allowed her to leave the State of Texas;" (d) "Q. I understand—that you have given Mr. Chambers and his then attorney to understand that no adoption of the child has been permitted? A. No, it has not. "Q. And it is not your purpose or intent to permit the child to be adopted under (until?) we have made a final determination? A. That's right."

In the meantime, to-wit, on November 10, 1951, George N. Chambers remarried; and on June 11, 1952, about two months after the order was made transferring Margaret's custody, George N. Chambers and his wife filed a petition in the trial court and thereby instituted the proceeding which is under review on this appeal. The petition alleged that Margaret Chambers had been declared a dependent and neglected child by the order of August 9, 1951, but that the marriage of petitioners and various circumstances concerning their ability and their desire to care for Margaret Chambers had made a change in conditions affecting the custody of said child. The prayer was the petitioners "have the custody and care of Margaret L. Chambers restored to them."

The petition alleged that the order of August 9, 1951 placed Margaret Chambers in the custody of Girls Haven; but it does not mention any change in custody nor, except, perhaps, by inference from the allegation concerning Girls Haven, did it show who had the custody of Margaret Chambers at the time nor where she actually was.

If there is an adversary party named in this petition this party is Girls Haven. Concerning Girls Haven finding 9 recites: "The only service made in this proceeding was upon Girls Haven of Orange, which organization was duly served and has appeared herein, and answered that they do not have the child and filed a plea in abatement."

The record contains no answer by Girls Haven, and the only pleading adverse to petitioners, George N. Chambers and wife which the record does contain is an instrument purporting to be a plea in abatement and to be filed by an amicus curiae. We infer that this is the plea in abatement mentioned in finding 9 and that it was treated as a pleading adopted by Girls Haven. This plea alleges the order of April 12, 1952, and describes it as transferring the custody of Margaret Chambers from Girls Haven to "other parties", man and wife, who are not named. It is alleged further that these persons had resided and were domiciled outside of the State of Texas since a time prior to the institution of this proceeding; that these "other parties", by virtue of the order of April 12, 1952 and with the consent of the trial court had taken Margaret Chambers out of the State of Texas before the petition was filed, to-wit, on or about "April, 1952", and had had Margaret continuously in their custody and outside the State of Texas since that time; that these "other parties" had not appeared and only Girls Haven had been cited and that Girls Haven no longer had custody of the minor. In substance, the plea is, not that necessary parties have been left out but that the trial court has no jurisdiction because the minor and the persons to whom her custody had been awarded were non-residents of the state and had not voluntarily submitted themselves to the jurisdiction of the trial court; and the prayer was that the petition of George N. Chambers and wife be dismissed.

The identity of the persons to whom Margaret was awarded by the verbal order of April 12, 1952 is not shown by the record. They are not referred to in the petition and finding 8 states that: "Neither Margaret L. Chambers nor this married couple having her custody have been served with any citation or legal notice of this proceeding instituted by the plaintiffs; and neither have the said minor nor the married couple having the custody of said minor made any appearance in this proceeding."

It is stated further in finding 8 that Margaret Chambers and the "married couple" to whom her custody was awarded in April, 1952 "have at all times resided outside of—Texas since April 12, 1952 to date."

The petition of George N. Chambers and wife was tried to the court without a jury. The regular judge recused himself, as we have stated, and the cause was tried by another. By agreement of the parties the plea to the jurisdiction of the trial court was carried along with the trial of the merits of the case. The trial court rendered judgment "that said plea in abatement is good and should be sustained and it is accordingly decreed and so ordered; furthermore, the court is of the opinion, after hearing the evidence as to the merits of the case, that the best interests of the said minor child would not be served by permitting said child to be taken from the people who now have the care and custody of said minor child and accordingly the request of the petitioners, George N. Chambers and wife, to have the custody of the child changed and to have the custody of the child awarded to said petitioners is hereby denied and it is so adjudged, ordered and decreed by the court." From this judgment George N. Chambers and wife have appealed.

## Opinion

(1) That part of the judgment which purports to sustain the plea to the jurisdiction is necessarily based on the verbal order of April 12, 1952. No error has been assigned to the proof made of this order, and the parties have not questioned the validity of the order; and since the adjudication of the plea was based upon the proof of this order, we need not, under our judgment herein, determine whether this proof was competent and we do not decide that question. However, the order should have been reduced to writing and entered in the minutes of the trial court. The general Rules of Procedure which govern the entry of judgments and orders of the trial court are T.R. 304 and 306a. Article 2335, R.S. 1925, provides for the entry of an order on the original hearing at which the status of the child is first determined and a custodian is first appointed, and Section 24-A of Article 2338-1, Vernon's Ann.Tex.Stats. provides that the court's "findings in such cases (those wherein it is sought to have a minor adjudged a dependent child) shall be entered in a book kept for that purpose to be known as 'Juvenile Record'." We have seen nothing in other statutes or others of the Texas Rules of Civil Procedure which distinguishes between the original order in a dependency proceeding and a later one changing the custodian and dispenses with entry of the later order.

(2) Margaret Chambers was adjudged a dependent child and her custody was awarded to Girls Haven by the trial court under Article 2335, R.S.1925, and related statutes; and this initial judgment recites that both she and her father, the petitioner George N. Chambers, were in court when judgment was rendered. The evidence also shows that at that time Margaret and her father were domiciled in the county in which the trial court sits. The trial court thus had jurisdiction, at that time, of the custody of Margaret Chambers.

Margaret Chambers and Girls Haven were also domiciled in said county when the verbal order of April 12, 1952 was passed. According to the findings of the trial court, read with the testimony which proved the making and character of said order, the verbal order of April 12, 1952 only purported to change the custody of Margaret from Girls Haven to the people who are referred to in the trial court's findings as the "married couple", that is, to substitute the "married couple" for Girls Haven. It did not purport to terminate the proceeding involving the custody and care of Margaret Chambers, if such a proceeding then existed, or otherwise to discharge Margaret from its jurisdiction and control.

However, the trial court, by sustaining the plea to its jurisdiction, has necessarily held that upon the execution of the verbal order of April 12, 1952 by removal of Margaret from this state, the courts of this state lost jurisdiction to control Margaret's custody and that Margaret's father and his present wife were remitted to the courts of the state into which Margaret had removed with her new custodians. Whether this result is correct depends upon the nature of the proceeding in which Margaret was adjudged a dependent child and upon the status assumed by Margaret's new custodians under the verbal order of April 12, 1952. It is our conclusion, based upon the following reasons, that the trial court did not lose jurisdiction over the custody of Margaret Chambers.

It is held on the one hand that the custodian appointed under Article 2335, R.S. 1925, and related statutes is not a guardian of the minor's person within the meaning of the statutes and of the provisions of the constitution which govern the probate court. See: Whittenburg v. Craven, Tex. Com.App., 258 S.W. 152; Thomason v. McGeorge, Tex.Com.App., 285 S.W. 285.

On the other hand, it is provided: (a) in Article 2335 that when a child adjudged dependent is "turned over to the custody" of a person or institution (some qualifications for said person or institution are prescribed) "such person or institution shall have the right to the custody of said child, and shall be at all times responsible for its education and maintenance, subject at all times to the order of the court"; (b) in Article

2336 that "Such institution or individual shall, with the consent of the court, have authority to place such child in a suitable family home, the head of such family being responsible for the maintenance and education of said child. Any institution or individual receiving any such child under the order of the court shall be subject to visitation or inspection by any person appointed by the court for such purpose; and the court, may at any time, require from any institution or person a report containing such information as the court shall deem proper or necessary, to be fully advised as to the care, education, maintenance and moral and physical training of the child, as well as the standing and ability of such institution or individual to care for such child. The court may change the guardianship of such child, if, at any time, it is made to appear to the court such change is to the best interest of the child"; and (c) in Article 2337 that the court "in which the child has been adjudged dependent or neglected" may order the child's parents to make payments for the child's support as directed by the court and that "The Court shall have power and authority to alter or change" these orders "as the facts and circumstances and justice may require".

■ These statutes undertake to provide an agency and a procedure for the continuous and proper care and upbringing of a dependent child; and we construe them as meaning that the court which appoints the minor's custodian is the one which has the powers and duties affecting this custodian which these statutes create. This is the sense of decisions holding that a parent's suit for restoration of his parental rights must be brought in the court in which the minor was adjudged dependent. See Hickman v. Smith, Tex.Civ.App., 238 S.W.2d 838; Cook v. Gregg, Tex.Civ.App., 226 S. W.2d 146. The statutes quoted, then, purport to give the trial court a continuing jurisdiction over the custodian of Margaret Chambers and do imply that a relationship between said court and custodian exist throughout the latter's appointment. In substance, the custodian (whose office is referred to in Art. 2336 as a "guardianship") seems to be an officer of the court through whom the court performs the State's function of caring for and rearing the minor child whom the initial judgment has separated from its parents.

In Michigan Trust Co. v. Ferry, 228 U.S. 346, 33 S.Ct. 550, 552, 57 L.Ed. 867, at page 874, it was said: "Ordinarily jurisdiction over a person is based on the power of the sovereign asserting it to seize that person and imprison him to await the sovereign's pleasure. But when that power exists and is asserted by service at the beginning of a cause, or if the party submits to the jurisdiction in whatever form may be required, we dispense with the necessity of maintaining the physical power, and attribute the same force to the judgment or decree whether the party remain within the jurisdiction or not. This is one of the decencies of civilization that no one would dispute. It applies to article 4, § 1, of the Constitution, so that if a judicial proceeding is begun with jurisdiction over the person of the party concerned, it is within the power of a state to bind him by every subsequent order in the cause. Nations v. Johnson, 24 How. 195, 203, 204, 16 L.Ed. 628, 631, 632. This is true not only of ordinary actions, but of proceedings like the present. It is within the power of a state to make the whole administration of the estate a single proceeding, to provide that one who has undertaken it within the jurisdiction shall be subject to the order of the court in the matter until the administration is closed by distribution, and, on the same principle, that he shall be required to account for and distribute all that he receives, by the order of the probate court." This principle was applied by the Supreme Court in that case against one appointed an executor in one state but afterward become domiciled in another state so as to uphold an order by the probate court of the first state which not only stated the executor's account and in doing so found that the executor had converted assets of the estate of a certain money value but which also adjudged the executor liable for this conversion and required

him to pay to an administrator de bonis non the sum for which he was liable in conversion.

These rules of decision have been applied in Texas against a non-resident guardian of a minor's estate. American Surety Co. v. Fitzgerald, Tex.Civ.App., 36 S.W.2d 1104.

The question then is, do the Texas statutes which provide and regulate the proceeding in which a minor is adjudged dependent and in which custody of the minor is given to an institution, as was done in the case of Margaret Chambers, make this proceeding "a single proceeding" throughout the statutory dependency of the minor within the meaning of the rules quoted from Michigan Trust Co. v. Ferry. It seems to us that these statutes do this in effect. Under these statutes, some of which we have quoted from and discussed, the proceeding has as much unity and continuity, in the same court, after the initial judgment establishing dependency and awarding custody as does the probate proceeding which was involved in American Surety Co. v. Fitzgerald or that in Michigan Trust Co. v. Ferry. The situation of the custodian under these statutes is not comparable to that of a custodian who is appointed in a divorce decree rendered by a Texas court. Since the dependency proceeding involving Margaret's custody was such a single proceeding, the non-residence of Margaret's custodians does not deprive the trial court of jurisdiction over them. They have entered their appearance, have willingly assumed an office (in effect, become an agent of the trial court) which subjects them to the exercise of powers by the trial court throughout their appointment, and have consented to the exercise of the jurisdiction over them by the trial court. Nor does Margaret's own non-residence necessarily deprive the trial court of the jurisdiction over her which said court had when the verbal order of April 12, 1952 was rendered, regardless of where her domicile may now be. For the trial court had jurisdiction over her custody originally and her removal from this state need have no more effect upon the pending proceeding in the trial court than

in the case of any other party to a judicial proceeding who also leaves the state. These are applications of the rules quoted from Michigan Trust Co. v. Ferry. It is to be noted that in the latter case the jurisdiction of the court was not made dependent upon the presence of assets in the state of administration. The limitation upon the power of the trial court to perform its function which results from the non-residence of minor and custodians does not affect the jurisdiction of the court. Thus in Michigan Trust Co. v. Ferry, supra, it is said in 228 U.S. 346, 33 S.Ct. 553, 57 L.Ed. at page 875: "The decree upon the account was made with full jurisdiction, and, apart from the insanity of the accountant, could be sued upon (Storer v. Storer, 6 Mass. 390; Cobb v. Kempton, 154 Mass. 266, 269, 28 N.E. 264), and was entitled to full faith and credit elsewhere (Fitzsimmons v. Johnson, 90 Tenn. 416, 428, 429, 433, 17 S.W. 100). It is true that it could not be enforced in Michigan while the defendant remained out of the state. But while the want of power to enforce a judgment or decree may afford a reason against entertaining jurisdiction (Giles v. Harris, 189 U.S. 475, 23 S.Ct. 639, 488, 47 L.Ed. 909, 912), it has nothing to do with the validity of a decree when made. A decree in equity against a defendant who had left the state after service upon him, and had taken all his property with him, would be entitled to full faith and credit where he was found. The judgment of a court 'may be complete and perfect, and have full effect, independent of the right to issue execution.' Mills v. Duryee, 7 Cranch 481, 485, 3 L.Ed. 411, 412. See Kimball v. St. Louis & S. F. R. Co., 157 Mass. 7, 8, 31 N.E. 697, 34 Am.St.Rep. 250." This rule was applied in Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551, at page 556 (Hn. 17).

■ We think that the rules of decision quoted from Michigan Trust Co. v. Ferry ought to be applied to the dependency proceeding involving Margaret, and we conclude, therefore, that unless the verbal order of April 12, 1952 was intended by the trial court to have a different effect, this

order and its execution by removal of Margaret Chambers from this state did not automatically end the dependency proceeding involving Margaret's custody and did not automatically deprive the trial court of jurisdiction of either Margaret or the persons appointed by that order to be her custodians.

We have previously considered what effect the verbal order of April 12, 1952 was intended to have. The trial court intended by that order to do no more than substitute new custodians for Girls Haven, and it had only that effect. Accordingly, under the facts of the case, the dependency proceeding involving Margaret's custody is still pending in the trial court and said court still has jurisdiction over Margaret's present custodians.

We have thought it unnecessary to determine whether the domicile of Margaret Chambers has been changed.

Girls Haven argues that decisions are applicable in which it has been held that jurisdiction over a minor's custody depends either upon domicile, as in Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551, or on the physical presence of the minor within this state as in Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R.2d 1, or in Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187. This rule of decision is stated in Ex parte Birmingham, Tex.Sup., 244 S.W.2d 977. However, none of these decisions are in point on the facts. The particular rule of decision would apply at the beginning of a dependency proceeding, but it need not apply after such a proceeding has been lawfully started; and in Ex parte Birmingham, Tex.Sup., 244 S.W.2d 977 at page 980 situations like that here have been excepted from the rule relied on by Girls Haven and have been left open for future decision. Having stated that the court had sustained jurisdiction over a minor's custody only when the minor was domiciled or present in this state, the court said: "And we do not refer to unusal fact situations, not relevant here, such as when a valid divorce and custody decree of the forum, expressly reserving custody power for the future, comes to conflict with later established conditions of physical absence or foreign domicile of the child." There is, indeed, much authority holding that in a state where the award of custody in a divorce proceeding is regarded as a continuous and unitary proceeding, the divorce court does not lose jurisdiction over the custody of the minor. See: Kern v. Lindsey, 182 Va. 775, 30 S.E.2d 707, construing Virginia statutes. On the other hand, in Commonwealth v. Graham, 367 Pa. 553, 80 A.2d 829, the Supreme Court of Pennsylvania refused to give effect to a reservation of jurisdiction by the court of another state. For collections of decisions concerning this question, see: 27 C.J.S., Divorce, § 317–a p. 1185; Hersey v. Hersey, 171 N.E. 815, 70 A.L.R. 526; 4 A.L.R. 2d at pages 32, et seq., and pages 85 et seq.

[3, 4] Girls Haven also argues that petitioners George N. Chambers and wife have begun a new proceeding and that the custodians of Margaret should be made parties and given notice of the proceeding. The non-joinder of necessary parties was not raised in the trial court (apart from the matter of jurisdiction) but we agree that the petitioners started a proceeding which is new and independent in a sense. Petitioners have sued, either to be made the custodians of Margaret Chambers or else, perhaps, for the restoration of George N. Chambers' original parental rights. However, a judicial proceeding may be independent in one sense and for one purpose, as, for instance, in the sense that an appeal will lie from the order determining it, and yet in another sense it may be only a part of another proceeding as we think the present one was. The situation may be illustrated by Ex parte Roberts, 139 Tex. 644, 165 S. W.2d 83 and McAfee v. McAfee, Tex.Sup., 255 S.W.2d 185. Kelly v. Page, Tex.Civ. App., 186 S.W.2d 735, is not in point on the facts. The custodian was not a party and the institution sued for custody by the father had no rights under the custodian. The order rendered in the dependency proceeding seems to have been violated and the suit did not involve the dependency pro-

ceeding in any way except, perhaps, incidentally. We do not agree that rules of decision concerning the effect of a custody decree in a Texas court, rendered in a divorce suit, and concerning the nature of a subsequent suit by a parent to recover custody from the custodian under the divorce decree have any necessary application to a dependency proceeding. The situation of the custodian in the divorce court is not like that of the custodian in the dependency proceeding, and his relation to the court which rendered the divorce decree is not the same as that which the custodian of a dependent minor bears to the court appointing him. We also agree that on the facts before us Margaret's custodians should be made parties to the proceeding which petitioners have begun. Article 2335 provides that the original custodian "shall have the right to the custody" of the child, and this must also apply to the successor of the first guardian. Article 2336 provides that the court may change the "guardianship" of the child "if, at any time, it is made to appear to the court such change is to the best interest of the child." Various duties are imposed upon the custodian by these and related statutes. The statutes referred to imply that normally the custodian should be made a party and given notice of the parent's suit for custody or restoration of parental rights before the parent's prayer is adjudicated, and no facts are before us which take this case out of this rule. Whether the court can act in a more summary way in a different case, as for instance, when told by an investigator that a custodian is not performing his duty, is a question not involved in this appeal.

Petitioners George N. Chambers and wife seem to argue that the identity of the present custodians of Margaret was suppressed and concealed from them, and Point 1 assigns error to the trial court's action on a motion filed by the person who, as amicus curiae, filed the plea to the jurisdiction. This motion alleged that for the welfare of the minor the names and the location of these custodians should be concealed. The merits of the Chambers petition were tried

and then the trial court was reopened nearly four weeks later in order that the testimony of the regular judge of the court concerning the verbal order of April 12, 1952, could be given. The only evidence of any action on the motion to suppress the identity and the location of the minor's custodians is in the statement of facts, and according to this evidence the motion was first presented when the case was reopened. At that time it was sustained, and, because it was, the witness, that is, the regular judge of the court, who had made the order of April 12, 1952 appointing the minor's present custodians, declined to state where Margaret Chambers was. One of the witnesses, a former officer of Girls Haven, who testified by deposition on the original hearing, had also refused to give this information in answer to questions asked on her deposition, and she testified on deposition that she had tried to conceal Margaret's location. And there is a statement about the concealment of the whereabouts of Margaret Chambers, made on the original hearing by the lawyer who then represented petitioners Chambers and wife. The petitioner Mrs. Chambers testified that before the petition was filed she had been told (by whom, she did not say) that Margaret had been "let out for adoption and taken out of the State of Texas, and she also testified that one of the directors of Girls Haven had told her Margaret Chambers was in Alabama. She said that she did not know where Margaret Chambers was. According to Mrs. Chambers, the information that Margaret had been delivered to others and taken out of the state caused this proceeding to be begun. George N. Chambers was a witness in his own behalf on the original hearing, but he did not testify about these matters.

■■ There is very little evidence of or concerning any effort of petitioners to discover where Margaret and her custodians were or any effort to discover the identity of the custodians; and under the circumstances related above the petitioners have not shown that the trial court's action in sustaining the motion to suppress this information actually caused them to

omit Margaret's custodians from this proceeding. Point 1, therefore, does not demonstrate reversible error. However, the trial court should not suppress the identity of Margaret's custodians and the location of these people and of Margaret. The first paragraph of Article 2337 recognizes the right of a parent to the restoration of his parental rights, and in decisions cited above, namely, Hickman v. Smith and Cook v. Gregg, this right is also recognized; and these authorities imply that the parent, at least when he acts in good faith and not for the purpose of interfering with the custodian's performance of his duties, is entitled to see and know the terms of the order appointing the custodians. Otherwise, the parent's right to restoration of his parental rights might be thwarted. Girls Haven argues that petitioners should be remitted to an independent investigation. However, if this investigation succeeds, the suppression of evidence will have failed and served no apparent purpose, and if it does not succeed the parent will have been denied his right to sue for the restoration of his parental rights.

(3) Our conclusion, then, is that the trial court erred in sustaining the plea to the jurisdiction. The trial court's judgment, however, raises a question as to what effect this error shall have. The trial court did not dismiss the petition after sustaining the plea, as that court should have done, but instead, adjudicated the merits of the petition. These two rulings are inconsistent and cannot stand together; and if the plea to the jurisdiction had been correctly sustained the adjudication of the merits either would have been erroneous or else would have to be treated as setting aside the action on the plea. However, it seems that the order on the plea would have been omitted from the judgment unless it was intended to be effective, and in the statement of facts there are statements by the judge presiding which show that he did intend this order to stand. Furthermore, the parties have briefed this appeal as if the adjudication of the plea were in effect. We accordingly so construe the trial court's judgment. It having been

error to sustain the plea, can the adjudication of the merits stand? It appears that the petitioners Chambers and wife have omitted necessary parties and that the merits of their petition have been finally decided against them in a contest with a party which is not the custodian of the child and which had no interest in the proceeding except to be discharged from the demand that it surrender a custody it did not have. That is, a decree has been rendered in behalf of the custodians although they were not parties. Further, there is no evidence about the conditions and environment in which Margaret Chambers now lives. Under the circumstances, the adjudication of the merits will not be given the effect of obviating the error in sustaining the plea to the jurisdiction; and it ought not to stand.

The judgment of the trial court is therefore reversed and the cause is remanded.

### On motion for rehearing

(1) In the argument under Ground 1 of the motion it seems to be said that the verbal order of April 12th was only the court's expression of consent, made pursuant to Article 2336, that Girls Haven might place Margaret in a suitable home, and that it did not substitute for Girls Haven the persons who now have Margaret in their possession by making Margaret the "ward" and subjecting her "to the guardianship" (within the meaning of Art. 2336) of the persons who now have Margaret.

It seems to us that if the verbal order of April 12th was only the expression of consent provided for by Article 2336, Girls Haven remains the "guardian" of Margaret and Margaret remains the "ward" of Girls Haven and thus the domicile of Margaret remains in Texas and the plea to the jurisdiction of the trial court necessarily fails. However, we are not in agreement with the suggestion under Ground 1.

The informality of the proceeding of April 12th is certainly consistent with a mere expression of consent, but testimony of the judge who made the verbal order of

April 12th supports a finding that it changed the "guardianship" of Margaret from Girls Haven to the persons with whom she now resides. For convenience we shall refer to these persons as the non-residents. Thus the judge said he "changed the order." This statement must have referred to the original order declaring dependency and making Girls Haven the "guardian" of Margaret. He also said that his verbal order of April 12th changed the custody of Margaret; this custody is presumably that mentioned in Article 2335. These statements indicate that he meant something more than a change in possession. We note also a statement by this witness that in the conversation with Mrs. Chambers about his verbal order of April 12th he told her that she could "go to court and attempt to have the order set aside. You will have to get an attorney." This construction of his own order by the witness indicates that the order was more than a simple consent.

Finding 4 of the trial court's findings of fact states that Girls Haven was relieved of custody and that custody was transferred to the non-residents, and other findings refer to a change in custody and to a transfer of custody. Finding 7 states that "Margaret's custody" was given to the non-residents on April 12th. Finding 8 refers to the non-residents as "having" Margaret's "custody" and Conclusion of Law 1 refers to the non-residents as "having" Margaret's "actual and legal custody." Conclusion 2 is that "the custody of—Margaret Chambers should not be changed because the best interests of said child would not thereby be served." Conclusion 2 evidently forbids a change from the non-residents, not from Girls Haven, to Mr. and Mrs. Chambers. The petition of Mr. and Mrs. Chambers prays that "the custody and care of Margaret (be) restored to them" and this must be the custody which was denied by Conclusion of Law 2. All of these references to custody in the Findings of Fact presumably refer to the same thing and evidently mean more than possession. Thus in Conclusion of Law 1 the non-residents have

"actual and legal custody"; the use of *actual* as well as *legal* shows that the trial court intended more than possession and meant, instead, that the non-residents had the right to custody which is referred to in Art. 2335; and Conclusion of Law 2, denying the Chambers's petition, would seem to refer to exactly the same thing as did Conclusion of Law 1. All these matters show that the trial court regarded the non-residents, not as mere possessors but as successors in right to Girls Haven, that is, as the "guardians" of Margaret. The findings respecting the order of April 12th have not been attacked and are, of course, binding on us.

The plea in abatement, so-called, attacking the trial court's jurisdiction, which the trial court purported to sustain, alleges that "custody" was transferred to the non-residents "on or about April, 1952" and that Margaret had not only *resided* but had also been *domiciled* out of the State "since April, 1952." The allegation of *domicile* in addition to the allegation of *residence* indicates that the pleader had in mind a change in "guardianship". In paragraph 7 of this plea it is alleged that "at the time Girls Haven was cited it no longer had *custody* of said minor and did not have *control* of said minor for the reason that said minor had been transferred to other parties on or about April, 1952" and it is also alleged of the non-residents that they had both *control* and *custody*. Use of both words, *control* and *custody*, indicates a distinction by the pleader between possession and the right to custody.

Finally, the argument under Girls Haven's Counterpoints 2, 3, 4, 5, and 6 indicates that Girls Haven construed the verbal order of April 12th as one changing "guardianship"; and it is stated on page 12 of Girls Haven's original brief that Margaret had become a ward of the non-residents and because of this had assumed the domicile of the non-residents.

In view of this record we adhere to our conclusion, arrived at on the original hearing, that the verbal order of April 12th pur-

ported to substitute the non-residents for Girls Haven, that is, to change the "guardianship" of Margaret.

(2) The argument under Ground 1 also raises a question as to whether the non-residents made an appearance in Margaret's dependency proceeding. There is nothing to show that the non-residents did not participate in the proceeding of April 12th; inferentially they did, since they took Margaret with them. We must assume on the record before us that the non-residents did whatever was necessary to make the proceeding of April 12th effectual.

(3) Ground 2 of the motion reads: "The Court of Civil Appeals erred in its decision that the petition by the natural father for restoration of custody, based on changed conditions, is not a new and independent proceeding."

We think that the proceeding under review is independent so far as a right to appeal is involved; but we think that it is, nevertheless, a part of the unitary proceeding which we consider the dependency proceeding involving Margaret to be. If the petition of the Chamberses were granted in full it would terminate that dependency proceeding, that is, it would be the last part of, the final act done, in that proceeding. That parties and trial court considered themselves to be acting in the dependency proceeding is demonstrated by the fact that the Chambers's petition was filed and that the judgment was rendered under the same docket number and style as were given the original petition for declaration of dependency and the order so declaring.

■ (4) Concerning Ground 3:—We still do not see how the plea in abatement, which attacked the trial court's jurisdiction to hear and decide the proceeding under review, could be sustained and the merits of the Chambers's petition then tried; but we have concluded that we erred in giving effect to that part of the trial court's judgment which purported to sustain the plea in abatement. The judgment does not go further and dismiss it but, instead, rules on the merits and (see Conclusion of Law 2) does

this pursuant to the agreement of the parties. We have concluded that we ought to treat this action on the merits as setting aside the ruling on the plea in abatement, as has been done where demurrers are sustained and the merits then tried. See Goldsmith v. Mitchell, Tex.Civ.App., 57 S.W.2d 188, at page 190 (Hn. 2).

We adhere to the conclusions regarding the validity of the plea in abatement stated in our original opinion.

■ (5) Concerning Ground 4:—Since we have construed the verbal order of April 12th as intended to change the "guardianship" of Margaret and to substitute the non-residents for Girls Haven, it is immaterial whether the evidence supports the trial court's denial of the Chambers's petition because the non-residents were not parties to the proceeding and under the circumstances before us they were indispensable parties. Although the plea in abatement is an attack on the trial court's jurisdiction it also shows that indispensable parties have been omitted. We are now of the opinion, however, that there is some evidence to support the trial court's denial of the petition. Mrs. Holleman gave some testimony about the means of the non-residents; she said that the man had a ranch, "a big milk dairy." Her conversation with Margaret at S.F. 176 which occurred after Margaret had gone away with the non-residents proved Margaret's mental attitude. A relationship between the non-residents and Margaret had existed for several months before the order of April 12th and it had been observed; and the trial court could infer that the non-residents were good people, and that they and the child loved one another and could live together as parent and child. There was evidence in favor of the petitioners but there was also evidence which justified the trial court's conclusion not to entrust them with the child.

(6) Some deletions and formal changes have been made in the original opinion, of which notice will be given concurrently with the filing of this opinion. Because of these modifications, the original opinion and

this opinion will, together, be regarded as the complete opinion filed by the court on rehearing.

The motion for rehearing is overruled.