# EX PARTE EDWIN RAY BIRMINGHAM.

No. A-3352. Decided January 2, 1952.
(244 S. W., 2d Series, 977.)

*Atchley & Vance* and *Robert S. Vance*, all of Texarkana, for relator.

On the proposition that the trial court was without jurisdiction to issue the writ of habeas corpus, lacking jurisdiction of the subject-matter. Lanning v. Gregory, 100 Texas 309, 99 S. W. 542; Campbell v. Stover, 101 Texas 82, 104 S.W. 1047; Peacock v. Bradshaw, 145 Texas 68, 194 S.W. 2d 551.

*John D. Raffaelli*, of Texarkana, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Relator Birmingham invokes our original jurisdiction in *habeas corpus* to procure his release from the custody of the respondent Sheriff of Bowie County, who detains relator pursuant to a contempt commitment issued on August 28, 1951, by Hon. E. Harold Beck, Judge of District Court for the 5th Judicial District.

The commitment order arose out of a child custody proceeding brought "in the District Court" of said county on August 14, 1951, against relator by his former wife, Mary M. McCullough. That proceeding was itself in the form of *habeas corpus*, and the writ therein was issued on August 14, 1951, by Hon. N. L. Dalby, Judge of the District Court for the 102nd Judicial District, commanding relator, as respondent in that proceeding, to produce his two minor children "before the Judge of the 5th Judicial District at Boston in the County of Bowie * * * on the 27th day of August, A. D. 1951, at 10 o'clock * * *" and to show cause for his allegedly illegal detention of them. Relator disobeyed the writ by failing to produce the children before Judge Beck of the 5th Judicial District Court, who thereupon issued the order adjudging relator to be in contempt and committing him into the hands of the sheriff for confinement "until he is willing to obey the said writ of habeas corpus, and until he pays all the costs of this proceeding."

As part of the record included with relator's petition here there is a certified copy of the sworn petition of Mrs. McCullough for custody of the children, in which she alleges in substance: That relator Birmingham and the children are "residents" of Bowie County, Texas; that some five months before the suit, relator "delivered full and complete custody, care and control of said minors to the petitioners" (Mr. and Mrs. McCullough) "by reason of the fact that he had been unable theretofore to properly care for said children"; that on August 13,

1951, (the day before suit was filed) the children then being with their mother in Bowie County, relator "by force, stealth and trickery" took them away with him in an automobile; that "at the time said Edwin Ray Birmingham, Sr., had custody of the said minor children, he failed to properly care for them," and was not at the time of suit a proper person to have custody of them, whereas Mrs. McCullough was a proper custodian and should be given custody for the best interest of the children.

As stated, the writ issued pursuant to the foregoing petition was returnable on August 27th. Evidently relator Birmingham failed to appear on that day, but this failure resulted only in an attachment of his person and his appearance with counsel on the next day (August 28th) and is not a basis of the commitment order before us. On August 28th, relator presented a sworn plea to the jurisdiction of the court over the subject matter of the suit and sought to introduce evidence in support thereof. The court refused to hear such evidence either by way of hearing on the plea or for purposes of a bill of exception, but proceeded to make the commitment order. However, relator was allowed a rather elaborate bill, including a statement by his counsel of the evidence which he would have introduced if permitted to do so.

For our purpose, the substance of this evidence and of relator's plea was that "at the time of the institution of the proceedings involved herein" and thereafter up to and including the contempt proceeding, the children and relator Birmingham were "domiciled" in the State of Arkansas, not in Texas, and that during said period the children were at no time present within the State of Texas; that relator Birmingham was during said period the legal custodian of the children under the decree of an Arkansas court awarding him their custody and at the same time granting him a divorce from the present respondent, Mrs. McCullough.

The record reflects no pleadings or affidavits on behalf of Mrs. McCullough, except her abovementioned petition, and no evidence received or tendered from any source except that disclosed in relator's bill.

We pass over the question, not raised by relator, as to whether the commitment order was or not void as being a commitment by one court for the violation of the order of another court of this state. See Ex parte Gonzalez, 111 Texas 399, 238 S.W. 635; Ex parte Depew, 119 Texas 63, 24 S.W. 2d 813;

Rosenfield v. Campbell, Tex. Civ. App., 276 S.W. 728. It is, in any event, immaterial, if we are correct in our view that the order is void for lack of jurisdiction of either of the two courts over the matter of custody of the children.

■ Assuming such lack of jurisdiction to follow from the truth of relator's pleaded allegations, which Judge Beck evidently thought it did not, the refusal to hear testimony in support of the allegations and the consequent commitment of relator would obviously deprive the latter of his liberty without due process of law. Under the circumstances, we must assume.that the evidence would have been produced and would have been legally conclusive proof of the allegations. Indeed, from the record, including the one pleading or statement made on behalf of Mrs. McCullough, it seems quite likely that relator's essential allegations of fact were true.

■ It should, no doubt, be emphasized at this point that relator was obviously present in Bowie County when served with the writ in custody proceeding and when arrested and later committed, and that he and the children were probably present in the county on a day shortly prior to institution of the custody proceeding, though the children were not in the state when the proceeding was begun. For whatever relevancy the fact may have, the court, but for relator's plea and proffered evidence, doubtless did have jurisdiction over relator in the sense of lawful power over his person, including the power to make him appear in answer to the writ. However, assuming the controversy is not one in which mere power over the persons of the parties amounts to jurisdiction to decide the merits, if it develops after the writ has been served that the court does not otherwise have power to determine the controversy, the original power over the person of the relator may be said no longer to exist. To take a clear example, in a divorce suit in which the statutory residential prerequisites are shown to be lacking, or which was filed in the County Court, the fact that the defendant has been served with process in the usual manner and is present in court would plainly not authorize the court to bind him or her by some interlocutory order in furtherance of the divorce proceeding or commit him or her in contempt for disobedience of such order. In the instant case, the lack of power of the court to decide the basic controversy is alleged to arise from principles of the conflict of laws, but courts not infrequently apply those principles so as to reject their own jurisdiction over particular controversies, even though, by reason of the presence of the parties within the geographical

jurisdiction of the court, the latter could, as a practical matter, enforce by the contempt process whatever judgment it might render on the merits, as well as any interlocutory orders it might make.

■ But here, the children had their legal domicile in Arkansas. The present relator, their father, was domiciled in the same state and had custody of them under an Arkansas decree, which had also granted him a divorce from the children's mother, Mrs. McCullough. When the latter filed her custody suit in Texas, the children were physically in Arkansas, where they have since remained. Even were we disposed to accept the allegations of Mrs. McCullough's petition, which we probably should not do, since no proof of them was offered, we could not, in the light of the evidence offered by relator Birmingham, take them to mean more than that, at commencement of the custody proceeding, relator had been maintaining some sort of temporary abode in Bowie County, that the children's mother, Mrs. McCullough, was legally domiciled and resident there with her present husband, and that the children, until shortly before the suit was filed, had been living there for about six months with Mrs. McCullough under some legally informal arrangement between the latter and relator, which relator abruptly and surreptitiously terminated by taking the children out of Texas.

In Lanning v. Gregory, 100 Texas 310, 99 S.W. 542, 10 L.R.A. N.S. 690, we held a Texas court to be without jurisdiction to adjudicate the custody of a child domiciled in Louisiana but present in the state on a visit. Both the disputing father and mother were before the court, but were domiciled respectively in Louisiana and Kentucky, having been divorced at an earlier date by a decree which contained no custody provision. The decision is indeed not authority for the proposition that a Texas domicile on the part of the child is essential to our custody jurisdiction. See Wicks v. Cox, 146 Texas 489, 208 S.W. 2d 876, 4 A.L.R. 2d 1. See also Worden v. Worden, 148 Texas 356, 224 S.W. 2d 187. However, it still stands as authority for at least this much: that the power of the court over the persons of the contending parties is not of itself sufficient to confer custody jurisdiction If such power were enough, clearly we would have sustained jurisdiction and not rejected it. From the two recent decisions last above cited and those to which the opinions therein refer, it is shown that the two basic alternative prerequisites for custody jurisdiction are (a) domicile of the child

in the state and (b) its presence in the state. Thus we have held in Peacock v. Bradshaw, 145 Texas 68, 194 S.W. 2d 551, that custody of a Texas child may be adjudicated here even though the child be then residing beyond the state, and on the other hand, as in Worden v. Worden, supra; Wicks v. Cox, supra; Goldsmith v. Salkey, 131 Texas 139, 112 S.W. 2d 165, 116 A.L.R. 1293, and Campbell v. Storer, 101 Texas 82, 104 S.W. 1047, that, under particular sets of facts, each of which include the presence, though not the domicile, of the child within the state, our courts may determine custody. Except where the child is domiciled or physically present within the state, we have yet to hold our courts to be vested with custody jurisdiction, while considerable authority from other sources has expressly rejected jurisdiction where both of these prerequisites are lacking, and this although the contending parents may both be before the court. Ex parte Chandler, 36 Cal. App. 2d 583, 97 Pac. 2d 1048 (as restated and apparently approved in Sampsell v. Superior Court, 32 Cal. 2d 763, 197 Pac.. 2d 739, 747-8) ; State ex rel. Clark v. Clark, 148 Fla. 452, 4 So. 2d 517; Dorman v. Friendly, 146 Fla. 732, 1 So. 2d 734; Restatement, Conflict of Laws, secs. 145-148; 2 Beale, Conflict of Laws, sec. 1443. See also Stumberg, Conflict of Laws, p. 324 and the elaborate note in 4 A.L.R. 2d 7, 25. Ex parte Chandler, supra, is closely in point on the facts with the instant case. There is indeed some authority to the contrary. Ex parte Young, Cir. Ct. E.D. Tenn., 50 Fed. 526; Shaw v. Shaw, 114 S.C. 300, 103 S.E. 526. And we do not refer to unusual fact situations, not relevant here, such as where a valid divorce and custody decree of the forum, expressly reserving custody power for the future, comes to conflict with later established conditions of physical absence or foreign domicile of the child. But, as applicable to a situation like that before us, the rule denying jurisdiction of the forum in which the child is neither present nor domiciled seems preferable. In our view it not only favors the reasonable object of limiting further semi-procedural complications in this increasingly troublesome kind of suit, but in most instances will reasonably restrict the latter to the state or states best able to make a sound disposition of the controversy. The idea of a non-domiciliary court using its power over the person of a party to make him or her bring a child into the state, and especially away from the domiciliary state, in order to adjudicate custody seems to have little in theory or practice to recommend it.

■ It cannot, in our opinion, be said that in effect the children were present in the forum as a result of having resided (if they

actually did so) in Bowie County for some six months and up until only a day before Mrs. McCullough brought her suit. Assuming, as we may do against her interest, that she truthfully allged relator to have taken them away, he had power as custodian to do as much, and whether he did so a day or a week or a month before suit was filed is immaterial, as is also the fact, were it established, that he did so surreptitiously. See the cases cited in Wicks v. Cox, supra, 146 Texas 489, 208 S.W. 2d 876, 879.

It cannot validly be urged that, conceding ultimate lack of jurisdiction to adjudicate custody, the court yet had lawful power to make relator bring the children into court pending its determination of the jurisdictional question or as a necessary step in any *habeas corpus* proceeding. Obviously such a process would be a most burdensome formality and, indeed, by forcing the presence of the children into the forum would be tantamount to the court itself creating a jurisdiction which it did not otherwise have. In Ex parte Chandler, supra, under similar facts, the commitment for disobeying the order to produce the children was held void.

The relator is discharged and any liability of himself or his sureties upon his bail bond heretofore authorized is terminated.

Opinion delivered January 2, 1952.

Rehearing overruled January 9, 1952.