**Sheila Jean PERRY, Appellant,**

v.

**Davis L. PONDER, Appellee.**

**No. 20240.**

Court of Civil Appeals of Texas, Dallas.

July 7, 1980.

As Revised Aug. 19, 1980.

**310**

James L. Irwin, Dallas, for appellant.

John McClellan Marshall, Norton, Morrison & Marshall, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

GUITTARD, Chief Justice.

This child support and custody suit was dismissed by the trial court for lack of

personal jurisdiction over the father, a resident of Alabama. The court found that the father did not have those "minimum contacts" with the state of Texas required by due process. Insofar as the petition seeks to impose a personal obligation of support on the father, we affirm, but insofar as it seeks appointment of the mother as managing conservator, we reverse on the ground that since the child and the mother were residents of Texas at the time the suit was filed, the court should not have limited the inquiry to the father's contacts, but should have determined whether the child and the mother had resided in Texas long enough to give this state an interest in the child's welfare and access to evidence sufficient to enable it to make an informed decision concerning the child's best interests.

The evidence at the special appearance hearing is limited to the "minimum contacts" issue. The mother formerly lived with the father in Alabama. They were divorced there in June 1978 by a decree giving custody to the mother. On September 19, 1978, the mother moved with the child to Texas, where they have since resided. In April 1979 the father obtained a decree from the Alabama court modifying the divorce decree by granting custody to the father. Service of notice was attempted on the mother by registered mail, but the effectiveness of this service is disputed. On May 4, 1979, the mother filed the present suit in Dallas County, Texas, alleging that the Alabama modification decree was void because she and the child were then residents of Texas and she was given no notice or opportunity to appear in the Alabama proceeding. She alleged that it was in the best interest of the child that she be appointed managing conservator. She

also alleged that the father should be ordered to make monthly payments for the support of the child.

The father was served in Alabama with nonresident notice pursuant to the provisions of rule 108 of the Texas Rules of Civil Procedure. He responded by a special appearance under Rule 120a of the Texas Rules of Civil Procedure and prayed that the suit be dismissed for lack of personal jurisdiction over him.

Both parties were present at the hearing. The father testified that the mother had brought the child to Texas without his consent. The mother testified that the father knew about and acquiesced in her plans to move to Texas with child. The court apparently resolved this dispute in favor of the father and recited in the order dismissing the suit that the father "did not have those minimum contacts with the State of Texas that would constitutionally support the assertion of jurisdiction."

On this appeal the mother asserts that she has established a basis for personal jurisdiction over the father under subdivisions (2) and (4) of section 11.051 of the Texas Family Code.[1]

The mother contends that in determining the question of personal jurisdiction over a nonresident, the court should consider not only the specific requirements of section 11.051, but also should consider evidence of the court's ability to reach a result that would promote the child's best interest; and since she and the child had resided in Texas for approximately ten months, the state had an interest in providing an effective means of redress for its resident, and, also, the Texas court was the most convenient forum, based on its access to witness-

---

1. Section 11.051 provides:

In a suit affecting the parent–child relationship, the court may exercise personal jurisdiction over a person on whom service of citation is required or over the person's personal representative, although the person is not a resident or domiciliary of this state, if:

(1) the child was conceived in this state and the person on whom service is required is a parent or an alleged or probable father of the child;

(2) the child resides in this state, as defined by Section 11.04 of this code, as a result of the acts or directives or with the approval of the person on whom service is required;

(3) the person on whom service is required has resided with the child in this state; or

(4) notwithstanding Subdivisions (1), (2), or (3) above, there is any basis consistent with the constitutions of this state or the United States for the exercise of the personal jurisdiction.

es and evidence. Alternatively, she contends that even if the trial court had no personal jurisdiction over the father, it should have exercised subject–matter jurisdiction. In support of this contention, she relies on *Thornlow v. Thornlow*, 576 S.W.2d 697, 700 (Tex.Civ.App.–Corpus Christi 1979, writ dism'd w.o.j.), *cert. denied*, 445 U.S. 949, 100 S.Ct. 1596, 63 L.Ed.2d 784 (1980); *Hilt v. Kirkpatrick*, 538 S.W.2d 849, 851–52 (Tex.Civ.App.–Waco 1976, no writ) and also certain statements in *Wicks v. Cox*, 146 Tex. 489, 208 S.W.2d 876, 878 (1948) to the effect that the state has a sovereign's interest in the welfare of children within its borders.

The father contends that the court had no personal jurisdiction over him because of lack of the "minimum contacts" required by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and also that in the absence of personal jurisdiction, the court properly declined to exercise subject–matter jurisdiction.

We observe first that the trial court's recited finding of lack of minimum contacts disposes of any question of the application of subdivision (2) of section 11.051, which authorizes personal jurisdiction over a nonresident if "the child resides in this state as a result of the acts or directives or with the approval of the person on whom service is required." The father's testimony fully sustains the court's implied finding that the father neither directed nor approved the mother's acts in bringing the child to Texas.

Subdivision (4) of section 11.051 raises a different question. That subdivision provides that the court may exercise "personal jurisdiction" over a nonresident parent if "there is any basis consistent with the constitution of this state or the United States for the exercise of personal jurisdiction."

■ With respect to the claim for support, we conclude that the due process stan-

dard in subdivision (4) has not been met. Due process with respect to support orders was authoritatively defined in *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). In that case both parties lived in New York until their separation. The mother moved to California, but agreed to a Haitian divorce which awarded custody of two children to the father for the school months. After the divorce the father permitted one of the children to live with her. The other child followed without his acquiescence. The mother then sued in California for custody and increased support. The father did not contest the custody issue, but appeared specially to object to lack of personal jurisdiction with respect to the issue of support. The California courts overruled his objection to personal jurisdiction, but the Supreme Court reversed on the ground that the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) had not been met, since the father "did not purposefully benefit from any activities relating to the State of California." 98 S.Ct. at 1699. In the present case the evidence shows no contacts with the forum state on the part of the nonresident father more significant than those in *Kulko*. Consequently, we conclude that the trial court properly sustained the special appearance with respect to the support issue.

## II. DUE PROCESS AS APPLIED TO CONSERVATORSHIP

### A. *Distinction Between Support and Conservatorship*

■ Due process requirements have a different impact on the question of jurisdiction in a suit concerning conservatorship, as this court recognized in *Zeisler v. Zeisler*, 553 S.W.2d 927, 931 n. 3 (Tex.Civ.App.–Dallas 1977, writ dism'd).[2] A support claim is like a claim for debt in that it seeks a

2. In *Oliver v. Boutwell*, 601 S.W.2d 393 (Tex. Civ.App.-Dallas, 1980, no writ), a conservatorship modification action concerning a child no longer residing in Texas and not before the Texas court, this court applied the "minimum contacts" test in determining the question of

personal jurisdiction over the nonresident parent. The court had no occasion then to consider our present question of whether the "minimum contacts" test must be met when the child resides in the forum state.

personal judgment establishing a direct obligation to pay money. As a practical matter, such a judgment can usually be enforced only by the courts of the state of residence of the parent on whom such a duty is to be imposed, and those courts are usually in a better position to determine the circumstances bearing on his ability to pay. Custody, on the other hand, is more in the nature of a status, which can be determined and enforced by the courts of the state where the child resides, without any personal judgment requiring affirmative action by the nonresident parent. If he defaults, the consequence of the decree for him is largely negative, reducing his rights rather than increasing his obligations. *See* Traynor, *Is This Conflict Really Necessary?*, 37 Texas L.Rev. 657, 660–61 (1959). Moreover, although in both types of litigation the interests of the child should be paramount, its interests are less easily identified with the interests of one parent if the issue is custody than if the issue is support. Bodenheimer & Neeley–Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko*, U.Cal.D.L.Rev. 299, 233 (1979). These differences suggest that there are good reasons to give the activities of the nonresident parent in the forum state greater weight in determining whether due process permits a support obligation to be imposed on him than in considering whether due process permits him to be bound by a decree affecting his right to custody of a child residing in the forum state.

We recognize the disadvantage of a custody adjudication by a court which has no jurisdiction to render a personal judgment for support against a nonresident parent. This difficulty, however, is inherent in the Supreme Court's holding in *Kulko*. Weintraub, *Texas Long–Arm Jurisdiction in Family Law Cases*, 32 Sw.L.J. 965, 981 (1978). In that case the jurisdiction of the California court to adjudicate custody was not contested. The Supreme Court recognized California's substantial interest in providing for the support of children residing in California, but observed that this interest was served by the state's participation in the Uniform Reciprocal Enforcement of Support Act, which had also been adopted in New York. The Court pointed out that under that Act the California plaintiff could vindicate her claim for additional support by filing a petition in a California court and having its merits adjudicated in New York without either party having to leave his or her own state. This Act has also been adopted in both Texas and Alabama. Tex. Family Code Ann. §§ 21.01 to 21.66 (Vernon 1975); Code of Ala., Tit. 34, §§ 105 to 123 (1959). Consequently, the necessity for a separate adjudication of the support claim in Alabama does not present an insuperable obstacle to adjudication of conservatorship in Texas.

### B. *Due Process in Adjudications of Status*

In view of these differences, we have undertaken a review of the authorities for the purpose of determining whether due process permits an adjudication of custody binding on a nonresident parent whose activities have not established those "minimum contacts" required for a personal judgment for money or other executory relief. In the light of these authorities, we consider the mother's contentions that the trial court has "personal jurisdiction" under section 11.051, and, alternatively, that section 11.051 does not apply because the court has "subject–matter jurisdiction" to adjudicate the custody issue, even though "personal jurisdiction" in the sense of "minimum contacts" cannot be obtained. Either contention would require a determination of whether due process permits such an adjudication under the circumstances shown here. Accordingly, the principal question before us is whether due process permits a Texas court to adjudicate the custody of a child residing with one parent in Texas, based on nonresident notice to the other parent outside the state. We hold, for reasons now to be stated, that due process permits adjudication of the custody of a child residing in the forum state without a showing of "minimum contacts" on the part of the nonresident parent, and we also hold that if the requirements of due process and

applicable procedural rules are met, a Texas court has "personal jurisdiction" over the nonresident within subdivision (4) of section 11.051 to adjudicate the custody issue, even though it may not have such jurisdiction to render a personal judgment enforcing or imposing affirmative duties on the nonresident. We hold further that without such personal jurisdiction the court has no power to make a binding custody adjudication based on subject–matter jurisdiction alone.

The ultimate test of due process in suits against nonresidents is whether the circumstances are such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 56 L.Ed.2d 132 (1945). The inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980). The defendant's interest in protection against inconvenient litigation must be considered in the light of other relevant factors, including the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). If a personal judgment is sought against the nonresident, jurisdiction must be based on "minimum contacts," which have been defined by the Supreme Court in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), as "some act by which the defendant purposefully [availed himself] of the privilege of conducting activities within the forum state, thus invoking benefits and protection of its laws." In *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Supreme Court swept away the distinctions formerly recognized between actions *in rem* and actions *in personam*, and held that the fairness standard of *International Shoe* applies to suits concern-

ing property within the court's jurisdiction since such suits determine the rights of persons to such property. Nevertheless, the Court recognized that special principles apply to adjudications of status. Thus, in commenting that the rigid categories of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878) "could not accommodate some necessary litigation," the Court noted that the *Pennoyer* opinion pointed out that "cases involving the personal status of the plaintiff, such as divorce actions, could be adjudicated in the plaintiff's home State even though the defendant could not be served within that State." *Shaffer v. Heitner, supra*, 433 U.S. at 201, 97 S.Ct. at 2578. Acknowledging the continuing validity of this exception, the *Shaffer* opinion explains in footnote 30, *id.* at 208, 97 S.Ct. at 2852, as follows:

> We do not suggest that jurisdictional doctrines other than those discussed in text, such as the *particularized rules governing adjudications of status*, are inconsistent with the standard of fairness. [Emphasis added.]

This footnote has been interpreted as recognizing adjudications of status as an exception to the "minimum contacts" requirement of *International Shoe*. Bodenheimer & Neeley–Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko*, 12 U.Cal.D.L.Rev. 229, 230 (1979); *Developments in the Law–The Constitution and the Family*, 93 Harv.L. Rev. 1156, 1240 (1980). We do not interpret these references to "status" in *Shaffer* as implying that status is a "res" which may be determined in the absence of personal jurisdiction. We understand them rather as recognizing that a family relationship may be among those matters concerning which the forum state may have such an interest that its courts may reasonably make an adjudication affecting that relationship, even though one of the parties to the relationship may have had no personal contacts with the forum state.

The reasonableness of such an adjudication is well recognized in divorce cases,

in which the status of marriage may be adjudicated at the domicile of one party without establishing any contacts by the nonresident spouse with the state of the forum. *See Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Custody of children is a status or relationship in which the state has an interest no less than in a marriage. *See Wicks v. Cox*, 146 Tex. 489, 208 S.W.2d 876, 878 (1948); *Goldsmith v. Salkey*, 131 Tex. 139, 112 S.W.2d 165, 168 (1938). Moreover, custody litigation necessarily involves third persons, namely the children, whose interests should be paramount. Consequently, there is equal or greater reason for a court to determine a relationship affecting children residing within its borders without requiring personal service of process within the state or the "minimum contacts" recognized as equivalent to such personal service. Hazard, *May v. Anderson: Preamble to Family Law Chaos*, 45 Va.L.Rev. 379, 387 (1959); Ratner, *Child Custody in a Federal System*, 62 Mich.L.Rev. 795, 827 (1964); Traynor, *Is This Conflict Really Necessary?*, 37 Tex.L. Rev. 657, 661 (1959). For these reasons, custody of children has been recognized traditionally as a status which may be determined at the domicile of the child. *Peacock v. Bradshaw*, 145 Tex. 68, 194 S.W.2d 551, 555 (1946); *Mills v. Howard*, 228 S.W.2d 906, 908 (Tex.Civ.App.–Amarillo 1950, no writ). In divorce cases, courts have exercised jurisdiction to award the resident plaintiffs custody of minor children in the plaintiff's possession within the state, even if the defendants have been served constructively. *Mankiewicz v. Mankiewicz*, 177 A.2d 913, 915 (D.C.1962); *Hicks v. Hicks*, 193 Ga. 446, 18 S.E.2d 754, 756 (1942).

In accordance with these decisions, the original Restatement of the Conflict of Laws adopted domicile of the child as the test of jurisdiction in custody cases. Restatement, Conflict of Laws § 117, 145 (1934). The Restatement (Second), following Justice Traynor's opinion in *Sampsell v. Superior Court*, 32 Cal.2d 763, 197 P.2d 739 (1948), adopts three alternative grounds of jurisdiction: (1) domicile of the child, (2) physical presence of the child, and (3) per-

sonal jurisdiction over two or more parties to the controversy. Restatement (Second) of Conflict of Laws, § 79 (1971). The comment under section 79 points out that each of these independent grounds of jurisdiction is a reasonable basis on which the court may proceed to adjudicate custody in a proper case, but that the court may decline to entertain the suit if it concludes that the best interest of the child so requires.

Further recognition of child custody as a relationship which may be determined in a proper case without service of process within the state or the equivalent "minimum contacts" on the part of the nonresident parent is provided by the Uniform Child Custody Jurisdiction Act, which has now been enacted in at least thirty–four states. *See* Uniform Child Custody Jurisdiction Act, *reprinted in* 9 Uniform Laws Ann. 8 (West.Supp.1980) (table of adopting jurisdictions) [hereinafter cited as Uniform Act]. As one alternative ground of jurisdiction, that Act adopts the concept of the "home state," which is defined as the state in which the child has lived for as long as six months, or since birth if the child is younger than six months. Uniform Act, §§ 2(5), 3(a)(1). An alternative ground of jurisdiction is that it is in the best interest of the child that a court of the forum state assume jurisdiction because the child and at least one contesting parent have a significant connection with the forum state and there is available in the forum state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. *Id.*, § 3. The Act further provides that notice required for the exercise of jurisdiction shall be given in a manner reasonably calculated to give actual notice, including personal delivery of notice outside the state. *Id.*, § 5. If the court has jurisdiction, the decree is made binding on parties or persons served outside the state who have been given the opportunity to be heard. *Id.*, § 12. Courts subject to the Act are required to recognize decrees of other states which have assumed jurisdiction in accordance with similar requirements. *Id.*, § 13. The Act makes no requirement con-

cerning "minimum contacts" on the part of nonresident parties, but a court which has jurisdiction may decline to exercise it if it finds that a court in another state would be a more appropriate forum. *Id.*, § 7. This approach has been justified on the grounds, first, that custody determinations are proceedings affecting status, analogous to proceedings *in rem*, and second, "an evolving theory that minimum contacts of the state with the matter in litigation combined with fairness to the parties permit state judicial action binding on persons beyond its territorial limits, irrespective of whether an action in rem or in personam is involved." Bodenheimer, *The Uniform Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand.L. Rev. 1207, 1233–34 (1969).

This approach is supported by strong policy considerations. To hold that due process requires personal service within the state or the equivalent "minimum contacts" on the part of the absent parent would greatly magnify the personal and social problems of children of separated parents. The same problems would arise with respect to a custody award in a divorce decree as to a subsequent modification order. Although the nonresident parent may have had no contacts at all with the forum state, that state may have been the home of the child and the other parent for years, and its courts may have the best access to relevant evidence and be the only court with the immediate power to enforce its decrees with respect to children present within its territorial jurisdiction. Moreover, if "minimum contacts" were required, cases would arise in which no court would have personal jurisdiction over both parents. In the absence of á binding decree, the nonresident parent would be encouraged to engage in "seize and run" tactics and the other parent would then be prompted to respond in kind. *See May v. Anderson*, 345 U.S. 528, 542, 73 S.Ct. 840, 847, 97 L.Ed. 1221 (1953) (Jackson, J., dissenting). The adverse effects of a denial of jurisdiction on the emotional as well as the physical well–being of the children would be serious, since one of the greatest needs of such children is stability, which

requires an authoritative determination of custody. H. Clark, Law of Domestic Relations, 323, 325–26 (1968); Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand.L.Rev. 1207, 1208–09 (1969); Ratner, *Child Custody in a Federal System*, 62 Mich.L.Rev. 795, 803–08 (1964); *see Craft v. Craft*, 579 S.W.2d 506, 511 (Tex.Civ.App.–Dallas), *writ ref'd per curiam*, 580 S.W.2d 814 (Tex.1979).

In the interest of the child, some court must have jurisdiction to make a decision. *See Sampsell v. Superior Court*, 32 Cal.2d 763, 197 P.2d 739, 749 (1948). The child's future cannot be left hanging in limbo in order to satisfy a theory developed in the context of money judgments. Bodenheimer & Neeley–Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko*, 12 U.Cal.D.L.Rev. 229, 273 (1979). A construction of the Due Process Clause cannot be justified if it would place impossible or impractical obstacles in the way of settlement of matters in which the state has a vital interest, although they involve determination of the interests of persons outside the state, as the Supreme Court itself has recognized. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). It follows that lack of personal contacts by the nonresident parent with the forum state cannot properly be held to outweigh the state's vital interest in the welfare of children residing within its borders, and thus to relieve its courts of their responsibility of providing the protection of a stable home environment.

## C. *Propriety of the Forum*

These considerations and authorities lead to the conclusion that the standard of "traditional notions of fairness and substantial justice" laid down in *International Shoe* and elaborated in *Shaffer* as the ultimate test of due process may be met in a child custody case by delivery of personal notice outside the state without any requirement of "minimum contacts" on the part of the absent parent. Personal notice,

however, may not be sufficient for due process. If the child and the parent seeking to invoke the court's powers have only a tenuous relation with the forum state, the court may properly decide that the best interest of the child requires it to defer to the courts of another state having a more substantial interest and better access to relevant information. Traditionally, this declination to entertain the suit has been stated in terms of lack of jurisdiction over the subject matter, which may be ground for dismissal even though all parties are legally before the court. *Ex parte Birmingham*, 150 Tex. 595, 244 S.W.2d 977, 978–79 (1952). As a matter of sound administration of justice, Texas courts will not intervene in the domestic affairs of nonresidents, but will leave them to litigate in their home states. *Ex parte Birmingham, supra.* Accordingly, in determining whether the court will "take jurisdiction" of a suit for custody, the court will consider whether the courts of some other state would be in a better position to determine the child's best interests. *Wicks v. Cox*, 146 Tex. 489, 208 S.W.2d 876, 878–79 (1948). Although Texas precedents and statutes distinguish between subject–matter jurisdiction and personal jurisdiction, when one of the parties is a nonresident, propriety of the forum is a matter that bears on due process and, therefore, also on personal jurisdiction in the sense we use that term in this opinion.[3]

▪ Both the Restatement (Second) and the Uniform Act are consistent with this well–settled Texas law to the extent of

recognizing that in the case of nonresidents, the court should consider the circumstances of the child and of the parties in order to determine whether the custody issue should be decided in some other forum. Restatement (Second) of Conflicts of Law, § 79, comment *a* (1971); Uniform Act, § 7. Although Texas has not adopted all provisions of the Uniform Act,[4] its principles may be adopted by Texas courts to the extent that they are consistent with Texas decisions. Professor J. J. Sampson, though critical of the Act in respects not material here, states that much of its basic philosophy has merit and that its worthwhile principles may be applied, even without enactment as a statute. Sampson, *Jurisdiction in Divorce and Conservatorship Suits*, 8 Texas Tech.L.Rev. 159, 209–10 (1976). In this connection, it may be noted that the Supreme Court of Minnesota adopted the principles of the Uniform Act as its rule of decision, disregarding its own earlier precedents. *In re Giblin*, 304 Minn. 510, 232 N.W.2d 214, 221–22 (1975).

▪ Here we need not go so far. Without deciding that a Texas court should proceed with a custody hearing in each of the circumstances defined by section 3 of the Uniform Act as a ground of jurisdiction, we note only that the factual circumstances here may meet the jurisdictional standards of the the Act in at least two respects. The evidence shows that the child has resided in Texas more than six months (section 3(1)), and also indicates that the interests of the

---

3. Both the Restatement (Second) and the Uniform Act avoid any problem raised by the distinction between personal and subject-matter jurisdiction. Section 79 of the Restatement uses the term "judicial jurisdiction," apparently to cover both. Section 3 of the Uniform Act defines the "jurisdiction" of the court and section 5 specifies the type of notice required to make a decree binding on a nonresident when such "jurisdiction" exists. We have been required to consider the distinction in this case because it is preserved by sections 11.045 and 11.051 of the Texas Family Code.

4. We note that in 1979 Texas adopted a statute similar to section 3 of the Uniform Act, which appears as section 11.045 of the Texas Family Code (Vernon Supp.1979). This statute ap-

pears to broaden significantly the concept of subject-matter jurisdiction as applied in Texas decisions. It is also broader than its source, section 3 of the Uniform Act, since section 11.045 applies to all suits affecting the parent-child relationship, including presumably support proceedings, and it provides as one of its grounds of jurisdiction "the principal residence of the child" rather than the "home state" concept of the Uniform Act. Exercise of subject matter jurisdiction as so defined would be subject to due process limitations, such as that imposed by *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). This section which became effective after the present suit was filed has not been cited by counsel as bearing on the present case.

child may be best served by a custody adjudication in Texas because the child and one parent appear to have had a significant connection with Texas and there may be available to the Texas court substantial evidence concerning the child's present or future care, protection, training, and personal relationships (section 3(2)). Since the Act has not been adopted in Texas, we must make our own formulation of the rule to be applied in this case. Accordingly, we hold that the trial court should not have sustained the father's special appearance and dismissed the suit for lack of contacts by him with the state of Texas, but should have inquired into the circumstances of the parties and the child for the purpose of determining whether the child and the mother have been in Texas long enough to give this state a sovereign's interest in and responsibility for the child's welfare and to provide access to sufficient evidence to make an informed decision concerning the child's best interests. If the court determines on this basis that due process has been satisfied, the court should then inquire as to whether the child's interests would be better served by an adjudication of custody by the courts of Alabama. *See Wicks v. Cox*, 146 Tex. 489, 208 S.W.2d 876, 878–79 (1948).

We recognize that this standard may lack the desired precision, but "due process" is inherently imprecise. Equally imprecise is the formulation in *International Shoe* that the nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 56 L.Ed.2d 132 (1945). Little precision has been added by subsequent attempts at formulation, such as that approved in *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966), which recognizes "the relative convenience of the parties" and "the basic equities of the situa-

tion," in addition to the defendant's activity in the forum state, as factors to be considered in determining whether due process has been afforded. A test similar to that adopted here has been applied to determine subject–matter jurisdiction in such cases as *Wicks v. Cox*, 146 Tex. 489, 208 S.W.2d 876, 878–79 (1948), and *Ex parte Birmingham*, 150 Tex. 595, 244 S.W.2d 977, 978–79 (1952), an area in which precise formulation of jurisdictional standards is no less desirable. Consequently, we make no attempt at more precise formulation.

Although this holding may result in concurrent jurisdiction by the courts of more than one state, we are of the opinion that the potential for conflicts between competing jurisdictions does not present as great a threat to the welfare of children of separated parents as would the inability of the courts in any state to make a binding adjudication. Such a lack of jurisdiction would encourage the parties to resort to self help, disregarding the children's welfare. On the other hand, the problems posed by concurrent jurisdiction are susceptible of solution by orderly judicial processes. Though courts of more than one state may have jurisdiction, it does not follow that the courts of both states will exercise that jurisdiction and reach contrary results. *Sampsell v. Superior Court*, 32 Cal.2d 763, 197 P.2d 739, 750 (1948); Stansbury, *Custody and Maintenance Law Across State Lines*, 10 Law and Contemporary Problems 819, 831 (1944). The proper judicial attitude is to assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of the child. *Miller v. Schneider*, 170 S.W.2d 301 (Tex.Civ.App.– Fort Worth 1943, no writ).

 One principle bearing on this problem is full faith and credit. Although the effect of a modifiable custody decree has not been settled as a matter of federal constitutional law,[5] Texas courts are com-

---

**5.** R. Leflar, American Conflicts Law § 244 (3d Ed. 1977); R. Weintraub, Commentary on the Conflict of Law § 5.3B (1980); Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A*

*Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand.L.Rev. 1207, 1210–13 (1969).

mitted to the view that the custody decree of another state is entitled to full faith and credit with respect to its determination of facts existing at the time it was rendered. *Bukovich v. Bukovich*, 399 S.W.2d 528, 529 (Tex.1966); Sampson, *Jurisdiction in Divorce and Conservatorship Suits*, 8 Texas Tech.L.Rev. 159, 176 (1976). It is subject to modification, however, for a change of circumstances, as is a Texas decree. *Goldsmith v. Salkey*, 131 Tex. 139, 112 S.W.2d 165, 168 (1938). Also, it may be re-examined for lack of jurisdiction if the question of jurisdiction has not been contested in the proceeding in which it was rendered. *Fletcher v. Fletcher*, 404 S.W.2d 866, 867 (Tex.Civ.App.–Corpus Christi 1966, no writ); *Best v. Best*, 331 S.W.2d 364, 365 (Tex.Civ.App.–Texarkana 1959, no writ); *see Williams v. North Carolina*, 325 U.S. 226, 229–30, 65 S.Ct. 1092, 1094–1095, 89 L.Ed. 1577 (1944). We must presume that the law of other states is the same as that of Texas. *See Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex.1963). Consequently, if the trial court, on application of the standards stated in this opinion, determines that it has jurisdiction of the custody issue, we can expect that a custody decree will be recognized in other jurisdictions, including Alabama.

Another principle that serves to resolve the problem of potentially conflicting jurisdictions is comity. *May v. Anderson*, 345 U.S. 528, 535, 73 S.Ct. 840, 844, 97 L.Ed. 1221 (1953) (Frankfurter, J., concurring). Courts are showing a stronger tendency to recognize foreign custody decrees because of the social problems resulting from nonrecognition. Weintraub, *Texas Long–Arm Jurisdiction in Family Law Cases*, 32 Sw. L.J. 965, 972 (1979); *see Strobel v. Thurman*, 565 S.W.2d 238, 240 (Tex.1978). This principle is the basis for the reciprocal provision in the Uniform Custody Jurisdiction Act. Section 13 of the Uniform Act requires the courts in the enacting state to recognize and enforce custody decrees of other states which have assumed jurisdiction under factual circumstances meeting the jurisdictional standards of the Act. If we direct the trial court on remand to assume jurisdiction if it finds certain factual circumstances that would meet the jurisdictional standards of the Act, we may expect that a custody decree in this case would be recognized in any state which has adopted the Act. Although we have no information indicating that the Uniform Act has been adopted in Alabama, neither have we found any Alabama precedents that would preclude the Alabama courts from applying the same principle. Consequently, we have no reason to apply a different rule here because of the father's residence in Alabama.

Texas is committed to the same principles of comity and reciprocity by section 11.053 of the Texas Family Code, which is modeled on the Uniform Act. This section requires a Texas court to recognize and enforce a foreign custody decree "unless it is shown that the out–of–state court did not exercise statutory authority substantially in accordance with the jurisdictional prerequisites of this code."

■ In the present case the evidence shows that a custody modification decree was rendered in Alabama shortly before the present suit was filed. Although the validity of that decree is disputed, and it is not a matter to be considered at a special appearance hearing, its validity and effect must be determined by the trial court before a final custody decree is rendered. The trial court cannot properly ignore it and leave the parties and the child to the uncertainty of conflicting decrees. Presumably, Alabama courts have the same careful concern for the decree of a Texas court. *See Miller v. Schneider*, 170 S.W.2d 300, 303 (Tex.Civ. App.—Fort Worth 1943, no writ). Consequently, we conclude that the potential threat to the child's welfare that might result from a possible conflict between Texas and Alabama decrees is much less than the danger of leaving the child without the protection that a Texas decree would provide for a child residing in Texas.

D. *Inapplicability of May v. Anderson*

■ The most serious obstacle to these views is the opinion of Justice Burton,

320

speaking for four members of the Supreme Court, in *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). Although that opinion deals with full faith and credit and makes no mention of due process, it can be read as standing for the rule that a decree adjudicating custody must be based on personal service in the forum state or the equivalent "minimum contacts" on the part of the nonresident parent. Nevertheless, we are persuaded that *May* need not be interpreted as imposing such a requirement in cases like the present, when the child and one parent reside in the forum state. We reach this conclusion on several grounds.

(1) *May did not involve a case in which the child and one parent resided in the state in which the custody decree was rendered.* Therefore, the ruling may be regarded as limited to a situation in which the court that rendered the custody decree had no physical access to the child. *See Cannon v. Cannon*, 260 S.C. 204, 195 S.E.2d 176, 177 (1973). In *May* the only question presented to the Court by counsel was whether the Wisconsin court had jurisdiction to award custody on constructive service outside the state when neither the children nor the parent who had possession were within the state. Hazard, *May v. Anderson Preamble to Family Law Chaos*, 45 Va.Law Rev. 379, 383 (1959). Mr. Justice Burton rejected the contention that the technical domicile of the children with the father in Wisconsin was a sufficient basis for custody jurisdiction. The decision may well have been different if the children had been "within the jurisdiction" of the Wisconsin court at the time the divorce decree was rendered, as a footnote to the opinion strongly indicates. *May, supra*, 345 U.S. at 534–35, n. 8, 73 S.Ct. at 843–844.

 (2) *Since the Burton opinion did not represent the view of a majority of the court, the decision must be taken as authoritative only on the narrow ground stated by Mr. Justice Frankfurter in his concurring opinion.* The Supreme Court itself has recognized that a ground stated for a decision is not a holding of the Court unless as many

as five justices concur in it. Thus, the Court has said that when a case is decided by a fragmented court and no single rationale explaining the result enjoys the assent of five justices, the holding of the court may be viewed as the position taken by those justices who concurred on the narrowest ground. *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977). In *May*, Mr. Justice Frankfurter's vote was necessary to the decision, and his concurring opinion excludes any implication that the Wisconsin decree was invalid for lack of due process. His view was that the Court was deciding only that the full faith and credit clause did not require the Ohio court to accept the Wisconsin disposition of custody, without precluding the Ohio court from recognizing that disposition as a matter of comity under the local law of Ohio.

The Frankfurter opinion has been widely accepted as stating the authoritative basis for the *May* decision. The Restatement (Second) of Conflicts of Law, which was drafted after *May*, adopts this view. Restatement (Second) of Conflicts of Law, § 79, comment *c*. The Commissioners on Uniform State Laws adopted the same view in drafting the Uniform Act, which, as we have seen, does not require personal service of process within the forum state or equivalent "minimum contacts" for an adjudication of custody. Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand.L.Rev. 1207, 1232–33 (1969). The same interpretation has been adopted by two Texas courts of civil appeals. *Thornlow v. Thornlow*, 576 S.W.2d 697 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd w. o. j.), *cert. denied*, 445 U.S. 949, 100 S.Ct. 1596, 63 L.Ed.2d 784 (1980); *Hilt v. Kirkpatrick*, 538 S.W.2d 849 (Tex.Civ.App.—Waco 1976, no writ). Another explanation of *May* is that stated by the Supreme Court of Texas in *Mitchim v. Mitchim*, 518 S.W.2d 362, 365 (1975), namely, that Wisconsin had no statute authorizing extraterritorial service of process.

(3) *The Burton opinion in May must be interpreted in the light of subsequent expressions in Shaffer v. Heitner and Stanley v. Illinois.* As we have already observed, the Supreme Court in *Shaffer* apparently recognizes that adjudications of family relationships are exceptions to the general rule that requires "minimum contacts" on the part of a nonresident before the court can determine the rights of the parties. *Shaffer v. Heitner,* 433 U.S. 186, 208 n. 30, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977). Another decision bearing on the Court's attitude toward such adjudications is *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), a suit to terminate an unwed father's parental rights. Instead of holding that personal jurisdiction over nonresident fathers is necessary to terminate their parental rights, the Court required only that they be notified in order "to claim competence to care for their children." This procedure, said the Court, "creates no constitutional or procedural obstacle to foreclosing those unwed fathers who are not so inclined." The court added that such notice could be given by mail or by publication. *Id.* at 657, n. 9, 92 S.Ct. at 1216. It is unreasonable to suppose that the Court intended to provide less protection for parental rights when termination is sought than when the relief sought is the less drastic remedy of appointing a managing conservator, which does not terminate parental rights and is subject to modification. Consequently, it is clear from *Shaffer* and *Stanley* that the plurality opinion in *May* cannot properly be interpreted as requiring "minimum contacts" for all custody adjudications because such a requirement does not represent the present doctrine of the Supreme Court. Bodenheimer & Neeley–Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko,* 12 U.Cal.D.Law Rev. 229, 242–43, 251 (1979).

(4) *The Burton opinion in May rests solely on the rights of parents and does not consider the welfare of the children, which is the primary consideration in the selection of a forum for custody adjudication, according to the overwhelming consensus of legal scholars.* This consensus is another reason for concluding that the present Supreme Court would not apply the Burton opinion in a case like the present. Although Justice Burton recognizes that parental rights are "more precious than property rights," he gives no consideration to how the choice of forum will bear on the future of children of separated parents. This omission may possibly be explained by his emphasis on the fact that the habeas corpus proceeding before the Ohio court concerned only "the immediate right to possession of the children" rather than the ultimate issue of custody. *May, supra,* 345 U.S. at 532, 73 S.Ct. at 842. Consequently, it is most unlikely that the present Supreme Court will apply the Burton rationale to a plenary custody determination of a child residing in the state, as against the overwhelming weight of scholarly opinion, which supports the view that the welfare of the children, rather than the rights of the contesting parents, should be given primary consideration in determining the proper forum for custody adjudication. H. Clark, The Law of Domestic Relations, § 11.5 at 520–21; R. Leflar, American Conflicts Law § 244, at 494 (3d Ed. 1977); R. Weintraub, Commentary on the Conflict of Laws § 5.3c, at 262 (2d Ed. 1980); *cf. Wicks v. Cox,* 146 Tex. 489, 208 S.W.2d 876, 878–79 (1948) (determination of propriety of forum where nonresident parties appeared voluntarily). A broad application of the Burton rationale would ignore the interests of the children and expose them to the unsettling influences of child snatching and repeated custody litigation. H. Clark, *supra,* § 11.5 at 325–26, § 18.2 at 610–11; Bodenheimer & Neeley–Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko,* U.Cal.D.L.Rev. 299, 236 (1979); Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207, 1232 (1969); Hazard, *May v. Anderson: Preamble to Family Law Chaos,* 45 Va.L.Rev. (1959). These considerations may be expected to have substantial weight with the present Court.

### E. *"Personal Jurisdiction" Over Nonresident Parent*

Since, for the above reasons, we do not regard the Burton opinion as controlling on the question before this court, we are free to apply the enlightened principles of the Restatement (Second) of the Conflict of Laws and the Uniform Custody Jurisdiction Act, as well as traditional concepts of status adjudication. Nevertheless, we cannot approve the procedure adopted in *Thornlow v. Thornlow*, 576 S.W.2d 697, 700–01 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd w. o. j.), *cert. denied,* 445 U.S. 949, 100 S.Ct. 1596, 63 L.Ed.2d 784 (1980), and *Hilt v. Kirkpatrick*, 538 S.W.2d 849, 851 (Tex.Civ.App.—Waco 1976, no writ). In each of those cases the appellate court dismissed the nonresident defendant from the proceedings and directed the trial court to proceed to adjudicate the issue of custody in his absence. The effect of such an adjudication is not clear, since a custody decree is void with respect to anyone who is not actually a party. *Peacock v. Bradshaw*, 145 Tex. 68, 194 S.W.2d 551, 554 (1946). Although the court does not have jurisdiction to render a personal judgment for support against the nonresident father, we hold that it has jurisdiction to bind him by a custody decree if he has had the notice and opportunity to be heard required by due process, and if the court finds that it is a proper forum to determine the best interests of the child. Consequently, he should remain as a party if the court determines that it has jurisdiction to determine the conservatorship issue, at least for that limited purpose.

We recognize the difficulty the courts faced in *Thornlow* and *Hilt* when they determined that the trial courts had no personal jurisdiction over the nonresident defendants because of the absence of "minimum contacts." But lack of personal jurisdiction in this sense does not mean that a nonresident parent need not be made a party and be given an opportunity to be heard. Even an adjudication affecting family relationships or property rights, which may be made without "minimum contacts" on the part of nonresident parties in some situa-

tions, cannot be wholly *ex parte*, since due process requires that the nonresident be named as a party and be given a notice reasonably calculated to apprise him of the suit and allow him a fair opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Williams v. North Carolina*, 317 U.S. 287, 298–99, 63 S.Ct. 207, 213, 87 L.Ed. 279 (1942); *Atherton v. Atherton*, 181 U.S. 155, 172, 21 S.Ct. 544, 550, 45 L.Ed. 794 (1901). Without compliance with due process in this respect, the court cannot properly be said to have jurisdiction to make a binding decision, though its jurisdiction over the subject matter may be unquestioned. This kind of due–process jurisdiction may be regarded as jurisdiction over the person in a general sense, although it may not be sufficient for the rendition of a personal judgment for money or other executory relief. In this sense the court can never render a binding judgment without jurisdiction of both parties and subject matter. *See Martin v. Sheppard*, 145 Tex. 639, 201 S.W.2d 810, 812 (1947); *Mitchell v. Runkle*, 25 Tex. 132, 136 (1860); *Maury v. Turner*, 244 S.W. 809, 811 (Tex.Comm'n App. 1922, judgmt. adopted). Jurisdiction over the subject matter concerns the kinds of controversies a court has authority to entertain, as determined by application of jurisdictional statutes to the pleadings, without respect to whether the parties are properly before it. *See Federal Underwriters Exchange v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943); *Withers v. Patterson*, 27 Tex. 491, 495 (1864); *Compsey v. Brumley*, 55 S.W.2d 810, 812 (Tex.Comm'n App.1932, holding approved). Jurisdiction over the person concerns whether a party is properly before the court in the pending controversy, as authorized by procedural statutes and rules, within the limits of due process. *See Sgitcovich v. Sgitcovich*, 150 Tex. 398, 241 S.W.2d 142, 146–47 (1951); *Womack v. Shelton*, 31 Tex. 592, 593–94 (1869); *Bozeman v. Arlington Heights Sanitarium*, 134 S.W.2d 350, 351–52 (Tex.Civ.App.—Dallas 1939, writ ref'd).

■ We hold that "jurisdiction over the person" in this general sense is within section 11.051 of the Texas Family Code. The obvious intent of that section is to assert "personal jurisdiction" in the broadest possible sense consistent with due process. Weintraub, *Texas Long–Arm Jurisdiction in Family Law Cases*, 32 Sw.L.J. 965, 975 (1979); *cf. U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977) (scope of long–arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964)). Consequently, it is reasonable to interpret "personal jurisdiction" in subdivision (4) in the general sense of satisfaction of the requirements of due process and applicable procedural rules rather than in the more limited sense of "minimum contacts."

■ The broad interpretation of · "personal jurisdiction" adopted here is preferable, not only because of the evident legislative intent, but also because it would be less confusing in the area of procedure. Lack of amenability to process for an adjudication of status is a matter that a nonresident party should be able to raise by special appearance under Rule 120a of the Texas Rules of Civil Procedure, in the same manner as when the test of "personal jurisdiction" is "minimum contacts." This interpretation will avoid anomalous results, such as those in *Thornlow* and *Hilt.* Consequently, in this case, we hold that the father by his special appearance properly raised lack of "personal jurisdiction" with respect to both the support issue and the conservatorship issue, and that the court properly dismissed the claim for support, but erred in applying the "minimum contacts" test to personal jurisdiction with respect to conservatorship.[6]

### III. JUDGMENT

Accordingly, we affirm the order of the trial court insofar as it dismisses the claim for support. With respect to conservatorship, we reverse the order of dismissal and remand the case to the trial court with instructions to hold a preliminary hearing on the question of whether at the time this suit was filed, the child and the mother had resided in Texas long enough to give this state a sovereign's interest in and responsibility for the child's welfare and access to sufficient evidence to make an informed decision concerning the child's best interests, and to dismiss the suit if it finds on these considerations that the requirements of due process have not been met.

■ The court may also consider at such preliminary hearing any plea by the father that the court lacks subject–matter jurisdiction, or that even though the court has jurisdiction, the Alabama courts provide a better forum for determining the child's best interests with respect to conservatorship.[7] Although we recognized in *Oliver v. Boutwell*, 601 S.W.2d 393 (Tex.Civ.App.— Dallas 1980, no writ), and in *Crockett v. Crockett*, 589 S.W.2d 759, 762–63 (Tex.Civ. App.—Dallas 1979, writ ref'd n. r. e.), that these contentions cannot properly be raised by a special appearance, Rule 120a permits them to be asserted alternatively without making a general appearance, like a defense on the merits, after the plea of lack of personal jurisdiction has been overruled. *See Zeisler v. Zeisler*, 553 S.W.2d 927, 932 (Tex.Civ.App.—Dallas 1977, writ dism'd). The validity and effect of the Alabama modification decree is not a matter to be considered by the trial court in determining its own jurisdiction, but should be determined before issuance of a final conservatorship decree. *See Fletcher v. Fletcher*, 404 S.W.2d 866, 867 (Tex.Civ.App.—Corpus Christi 1966, no writ); *Best v. Best*, 331 S.W.2d 364, 365 (Tex.Civ.App.—Texarkana 1959, no writ); and *cf. Layton v. Layton*,

6. For the concept of "partial personal jurisdiction," *cf.* Sampson, *Jurisdiction in Divorce and Conservatorship Suits*, 8 Texas Tech L.Rev. 159, 205 (1976); Weintraub, *Texas Long–Arm Jurisdiction in Family Law Cases*, 32 Sw.L.J. 965, 981 (1978). *See also* Tex.R.Civ.P. 120a, which provides, "A special appearance may be

made to an entire proceeding or as to any severable claim involved therein."

7. We express no opinion as to whether these questions would be controlled by Section 11.-045 of the Texas Family Code in a case to which that section applies.

538 S.W.2d 642, 646 (Tex.Civ.App.—San Antonio 1976, writ ref'd n. r. e.).

Affirmed with respect to support; reversed and remanded with respect to conservatorship. Costs of the appeal are divided equally.