Newton B. SCHWARTZ, Appellant,

v.

Suzanne JACOB et vir, Appellees.

No. 14588.

Court of Civil Appeals of Texas.

Houston.

June 10, 1965.

Rehearing Denied Sept. 9, 1965.

Schwartz & Lapin, Newton B. Schwartz, Houston, for appellant.

Fred Parks, Ruby Sondock, Houston, for appellees.

BELL, Chief Justice.

Appellant, the father of two children, brought suit to obtain a reduction in child support payments from $525.00 per month for both children to $300.00 per month. By the time the case was reached for trial pleadings had been filed by appellee, the mother of the children and additional pleadings had been filed by appellant, so that the hearing below from appellant's affirmative standpoint was on appellant's efforts to obtain custody of the children and, if he were not successful in this, a modification of visitation privileges and a reduction in sup-port payments. Appellee, in the hearing, sought a judgment of contempt against appellant for failure to pay four monthly support payments, an increase in support payments, and a judgment for attorney's fees that were incurred by her in connection with the proceedings. Trial resulted in a judgment refusing to change custody from appellee to appellant, modifying visitation rights, reducing child support to $100.00 per week for both children, awarding $4,-000.00 attorney's fee to appellee and refusing to hold appellant in contempt.

While there are several complaints here by appellant, the basic complaints are that the court erred in not changing custody because there was no evidence to support his judgment or, in the alternative, that the judgment was against the overwhelming weight and preponderance of the evidence, and there is no basis for allowing an attorney's fee.

Appellee complains of the reduction in the amount of child support and of the modification of visitation privileges.

Appellant urges the court had no jurisdiction over custody and modification of visitation privileges because at the time of trial and judgment the mother had married Mr. Jacob and he, she and the children were domiciled in Louisiana. It appears that when all pleadings were filed, and proper service of notice had, Mrs. Jacob, the children and appellant were all domiciled in Houston. Very shortly before trial (18 days) the domicile of Mrs. Jacob and the children changed to Louisiana. Appellant's domicile has at all times been here. He was reared here. The acts, for the most part, that were relevant on the issue of custody occurred here and the witnesses in possession of relevant facts lived here. All of these facts gave the Texas court jurisdiction and it properly chose to exercise it. Worden v. Worden, 148 Tex. 356, 224 S.W. 2d 187; Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R.2d 1; Ex Parte Birmingham, 150 Tex. 595, 244 S.W.2d 977.

We really fail to see what comfort appellant could get out of the absence of jurisdiction because if the court had no jurisdiction it could not award him custody or increase his visiting rights.

Appellant at the outset urges reversal because he contends the trial court did not timely file findings of fact and conclusions of law after timely request. As we calculate the period of time, the last day for filing would have been Monday, January 18, 1965. The findings and conclusions were filed January 22, and amended findings were filed January 28. They were filed within time to be included in the transcript filed in this Court and were so included. Even though there be no timely filing, this does not mean there is reversible error. It must appear that injury resulted to appellant. We have a full statement of facts and fail to see where injury resulted to appellant. Bostwick v. Bucklin, 144 Tex. 375, 190 S.W.2d 818; Wagner v. Riske, 142 Tex. 337, 178 S.W.2d 117; Becker v. Schneider, Tex.Civ.App., 335 S.W.2d 850, no writ hist.; Tippit v. Tippit, Tex.Civ.App., 360 S.W.2d 177, no writ hist.

We have read the entire statement of facts and are of the view that the trial court's judgment leaving custody with the mother is supported by evidence of probative force and such evidence is sufficient in quantity and quality. The trial court possesses wide discretion in determining what is best for the children.

Here the evidence does show indiscretions on the part of the mother. It shows that at a time prior to her divorce from appellant and at a time between such divorce and prior to the divorce of appellee Jacob from his wife, the two of them participated in such indiscretions which consisted of courtship and sexual relations. However, the evidence reflects that these indiscretions took place away from the children. There is nothing from which the inference can reasonably be drawn that the children knew or probably knew of this conduct. The other evidence bearing on the issue of the welfare of the children is such as to reasonably lead to the conclusion that appellee has been a good mother to the children and adequately took care of their needs including training, and that their welfare would best be served by leaving them with her. There is nothing to suggest appellant was not a fit and proper parent, but between parents, both of whom are fit and proper persons to have custody, the trial court must under all facts determine which can best serve their welfare.

Appellee complains of the trial court's action in changing the visitation rights of appellant. The divorce decree of January 11, 1963, provided appellant should have the right to have the children with him on alternate weekends from 9 a. m. on Saturday until Sunday at 7 p. m. Too, he could have the children with him for a period of two weeks between June 1 and August 31. If appellant was unable to exercise his visitation rights on the weekends because of their being out of Harris County, he would be entitled to accumulate these visits so that he would have them with him an additional week during the summer and a week during Christmas holidays. The judgment appealed from is substantially the same as to alternate weekend visits except the children were to be placed by appellee on an airline in New Orleans about 5 o'clock p. m. on Friday and appellant was to place them on the airline at Houston for return to New Orleans about 7 o'clock p. m. Sunday. In addition to the summer visit of one month, appellant was to have the children during the first week of Christmas holidays.

The court found that the move of the mother and children to New Orleans warranted a change in visitation. The matter of the extent of visitation is largely within the discretion of the trial court, keeping in mind the welfare of the children. We fail to find any abuse of discretion. The flight from New Orleans to Houston is now less than one hour. It is ordinarily good

for children to grow up having regular association with each parent. The order provides this. We fail to see any likely adverse effect on the children.

Appellee next contends there was error in reducing support payments to $100.00 per week. There was a provision that this would be abated when appellant had the children with him in the one month summer visitation. The old order called for the abatement of $25.00 per week per child for each full week period the children were with appellant. The net result is that instead of annual payments of child support under the old order of $6,300.00, less abatement of $100.00 for the summer visitation of two weeks, the annual payments will amount to $5,200.00 less abatement of $400.00 during the summer visitation. This means net child support payable to appellee of $4800.00 per year.

Appellee's contention is that the court could not reduce the payments because there were no changed conditions in appellant's financial condition, except for the better, or in the needs of the children.

■ Again, the matter of the amount of child support is a matter largely within the discretion of the trial court. A court is given continuing jurisdiction over support by Article 4639a, V.A.T.S. The ability of the father, upon whom the primary obligation to support rests, to pay, and the needs of the children, having in mind their station in life, are determinative of the amount. Here the evidence shows that in 1962 appellant netted $52,000.00. In 1963 he netted $67,000.00. In 1964 it was estimated he would, from the practice of law, net more than $67,000.00. However, there was evidence that from this appellant had had to make payments of $30,000.00 on some property he had purchased that had not paid its way. While appellant's first obligation is to his children, we cannot say he should be placed in a straight jacket, so as to prevent his making legitimate investments that are likely to be productive. Too, for the trial court to consider was the fact that appel-

lant must now pay the cost of transportation twice a month and during the vacation periods from New Orleans to Houston and return for both children. We cannot say the trial court abused his discretion.

Appellant contends the trial court erred in allowing attorney's fees of $4,000.00 to counsel for the mother. Appellee complains because the trial court refused to hear evidence as to a reasonable fee for an appeal, if there was an appeal.

This case arose on petition of appellant to reduce child support. Appellee resisted. Finally, it also involved an attempt by appellant to change custody, and in any event visitation rights. Too, it involved a contempt proceeding against appellant for failure to pay child support for a three month period. Appellee alleged she was required to employ counsel to resist appellant's efforts and also to represent her and the children in the contempt proceedings.

■ With regard to the proceedings on the contempt feature of the case, it is noted that the court did not find appellant in contempt though he found that the three months' payments were not in accord with the support order. The support order provided that the payments should be made to appellee "through the child support section of the Harris County Probation Office." The evidence shows that except for the three months involved payment by the personal check of appellant was sent to the Probation Office. Just before the first of the three months' period involved, appellant opened an account in the Liberty Savings & Loan Association in the amount of $5,400.00. He stated in an instrument signed by him that the funds were to secure the support payments. The evidence undisputedly shows the funds were his separate property. He retained for himself, his heirs and executors full control, but stated the funds were to be solely for the purpose of monthly withdrawals in the amount of the support payments. However, the signature of the wife was necessary on any check on the account since the payments were to be made

to her for the benefit of the children. For the three months involved appellant sent checks on these accounts to the Probation Office. They could not be cashed by that office because Mrs. Jacob's signature was necessary. Mrs. Jacob was notified by the Probation Office of the checks but she did not go to that office to sign them. It is her position that these funds were the children's by reason of the deposit in the account and that appellant could not use their funds to discharge his obligation, and that they were not payment through the Probation Office because they were not cashable by that office. The court, after hearing, required appellant to pay funds represented by these checks. The court found payments had not been made in accord with its judgment.

These funds were not the property of the children. Appellant showed clearly his intention in opening the account that they were put there solely to be used in discharge from time to time of his obligation. He retained title, though the signature of the children's mother was necessary for withdrawals. For equitable title to vest in the children the intent of the donor to effect such must be shown. The contrary is shown here. Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975. The checks were available if Mrs. Jacob would go to the Probation Office and sign them. This may not seem to be asking much, but in a city the size of Houston it is a considerable requirement. From the record we gather that the practice of the Probation Office is to take a check sent by the father payable to it and credit it to the proper account. It then deposits the check to its account and issues its check to the mother and mails it to her. Appellant was apparently acquainted with this practice as he had previously sent his personal check to the Probation Office and no controversy had arisen. The trial court could well have concluded, or it did, that the payments were not in accord with the court's order to make unqualified payments through the Probation Office.

Under Rule 308-A the court has authority to allow attorney's fees against a person in default in paying child support. The authority to do so is not dependent on whether the court actually holds such person in contempt, but whether the person is in default. A part of the fee allowed could be allowed under Rule 308-A.

There is yet another reason for allowing attorney's fees here. The father initiated the action by filing to reduce payments to $300.00 per month. He then sought a change of custody and modification of visitation privileges. The mother's action, except as to a plea for increased support for the children and the prayer for attorney's fees was purely defensive.

We hold that under such circumstances the real parties-defendant, though not the formally named ones, were the children and the furnishing of counsel was the furnishing of necessaries to the minor children. The allowance of the fee is not to the divorced wife for services rendered her, but for services rendered by the attorneys, at the instance of the mother, to the children. There are no Texas cases precisely in point. This is the rule in most states though the reasons assigned are various. 15 A.L.R.2d 1270.

In the recent case of Burson v. Montgomery, Tex.Civ.App., 386 S.W.2d 817, this Court had occasion to deal with the question of who were the real parties at interest in a child custody proceeding. We there reviewed various cases and came to the conclusion that the real parties at interest, though they were not formally named as such, were the children. We need say no more in this connection here, except that the same is true where the matter of support for the children is involved.

The theory on which attorney's fees are allowed a wife in a divorce suit is that they are necessaries. There is no statute or rule allowing them. Roberts v. Roberts, 144 Tex. 603, 192 S.W.2d 774.

There is a host of cases to this effect. The husband has a common law obligation to furnish necessaries for the wife and children, so the same principle applies in this case.

In the case of Portwood v. Portwood, Tex.Civ.App., 109 S.W.2d 515, appl. for writ dism., the court held in an annulment suit, where the marriage was not absolutely void, the wife was entitled to attorney's fees apparently on the theory that they were necessaries. No statute authorizes such, but the husband has a common law obligation to furnish necessaries.

In the case of Morgan v. Drescher, Tex. Civ.App., 219 S.W.2d 488, writ ref., n. r. e., this Court held a divorced wife was entitled to recover from the father the sums she had paid to furnish necessaries for their children between the ages 16 and 21 when the father ceased furnishing such on the sixteenth birthday.

Under the circumstances of this case, we are of the view that attorney's fees allowed were necessaries furnished the children. Food and clothing are but a small part of the things necessary to properly rear children. Education, cultural development, religious and ethical training are equally as important, if not more so. The obtaining of means to furnish them is necessary. Too, the kind of a home in which the children are reared and the persons with whom they daily associate are most important. Therefore, the matter of their custody is of utmost concern. For there to be a full development of matters bearing on these issues it is necessary to employ counsel to look after the children's interest. It does not suffice to suggest, as does appellant, that he was looking after their interest. He had a personal partisan interest also. The mother did too. Our adversary system is best suited to a development of the true facts and the adversary system envisions the right of representation by counsel.

We are aware that recovery is to be had by the person furnishing the necessaries. In the posture of the pleading and judgment here we think recovery was had by the attorneys. The pleading for attorney's fees showed it was for services rendered by the attorneys for the minors' welfare. The attorneys were not formally named as parties to the suit but they were named as the parties rendering the services. Under such circumstances, the recovery is for the attorneys and they are bound by the judgment. They signed the pleadings. They participated in the trial. The judgment ordered payment of attorneys fee to counsel by appellant. It is evident that the fee was for services in protecting the interest of the minors at the instance of the mother, and recovery was sought for the attorneys. Roberts v. Roberts, 144 Tex. 603, 192 S.W.2d 774.

The refusal of the trial court to hear evidence on a reasonable attorney's fee in case of an appeal was tantamount to his refusal to allow a fee for the appeal. This was a matter within his discretion.

All points raised have been considered by us and though not specifically discussed, they are found to be without merit and are overruled.

Affirmed.

### On Motions for Rehearing

We would only add to our original opinion a clarification. The attorney's fee allowed was not allowed the former wife because of any right in her as an individual. The attorney's fee was properly allowed and directed to be paid the attorneys because the services rendered by the attorneys, at the instance of the mother, were necessaries furnished the two minor children. The former wife had no right to an attorney's fee as an individual.

The motions for rehearing of both appellant and appellee are overruled.