NO. 07-05-0372-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 3, 2007

_____

IN THE INTEREST OF B.R.K.

_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 32,152; HONORABLE LEE WATERS, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Brienna Dale Taylor, appeals the trial court's order modifying a prior order in suit affecting the parent-child relationship by removing from her the exclusive right to establish the domicile of B.R.K. and by granting to Appellee, Ryan King, that right. Presenting two issues, Brienna maintains (1) the overwhelming evidence is contrary to the trial court's findings of fact, and (2) the trial court erred in not granting a new trial based on newly discovered evidence. We affirm.

B.R.K. was born on November 29, 1999. By order dated March 5, 2001, the trial court established the parent-child relationship between Ryan and B.R.K., ordered Ryan to pay child support, and appointed Ryan and Brienna as joint managing conservators, with Brienna being designated as the primary conservator with the exclusive right to determine B.R.K.'s residence. On November 30, 2004, Ryan filed a motion to modify the prior order by requesting that he be appointed sole managing conservator. Following a hearing and presentation of evidence, the trial court modified the prior order in favor of Ryan.

## Standard of Review

A court may modify an order that provides the terms and conditions of conservatorship if modification would be in the best interest of the child and upon a showing that the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of rendition of that order. *See* Tex. Fam. Code Ann. § 156.101(1 ) (Vernon 2002).[1] *See also Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex.App.–Austin 2006, pet. denied). The best interest of the child shall always be the primary consideration. § 153.002.

Additionally, the trial court should also seek to implement the public policy of this State which is to:

---

[1]Unless otherwise designated, all section references are to the Texas Family Code Annotated (Vernon 2002).

2

> (1) assure that children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
>
> (2) provide a safe, stable, and nonviolent environment for the child; and
>
> (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

§ 153.001(a). In a suit affecting the parent-child relationship, the court's findings shall be based on a preponderance of the evidence. § 105.005.

A modification order will not be disturbed on appeal unless the complaining party establishes a clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or whether it acted arbitrarily and unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The fact that a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate that an abuse of discretion has occurred. *Id.* A trial court is in the best position to observe the demeanor and personalities of the witnesses that cannot be evaluated from a cold reading of the record. *Warchol v. Warchol*, 853 S.W.2d 165, 169 (Tex.App.–Beaumont 1993, no writ). Thus, it is well established that as long as some evidence of a substantive and probative character exists to support the trial court's order, no abuse of discretion has occurred. *Valdez v. Valdez*, 930 S.W.2d 725, 731 (Tex.App.–Houston [1st Dist.] 1996, no writ).

The abuse of discretion standard in a family law case overlaps the traditional sufficiency standard of review. *See Crawford v. Hope*, 898 S.W.2d 937, 940 (Tex.App.–Amarillo 1995, writ denied) (noting that under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in determining whether the trial court abused its discretion. *See also Seidel v. Seidel*, 10 S.W.3d 365, 368 (Tex.App.–Dallas 1999, no pet.); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex.App.–Austin 1997, no pet.). Thus, in applying the abuse of discretion standard, an appellate court must engage in a two-pronged inquiry: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. *In re De La Pena*, 999 S.W.2d 521, 525-26 (Tex.App.–El Paso 1999, no pet.). The traditional sufficiency review applies in the first inquiry and then a determination must be made whether the trial court's decision was neither arbitrary nor unreasonable. *Id*.

## Factual Background

B.R.K. has a significant medical history. When he was three months old, he was hospitalized for failure to thrive. In approximately six years, he was hospitalized approximately forty times, including several visits to specialists in Dallas. He suffers from asthma, allergies, pneumonia, lung problems, gastroesophageal reflux disease (GERD), and immune disorder.

Brienna testified she has received specialized training to treat B.R.K. should he suffer an asthma attack, and she is aware of B.R.K.'s nutritional needs in order to control his reflux problems. Until shortly before the hearing, Brienna did not work outside the home. Instead, she worked as a licensed foster caregiver in order to remain at home to care for B.R.K. In caring for him, Brienna receives help from her mother, who was also a licensed foster caregiver.

Ryan is married and has another son and a stepdaughter. He works regular hours as a machinist. He has no specialized training regarding B.R.K.'s medical problems. Except for a few instances, Ryan did not accompany B.R.K. to doctor's appointments or hospital visits. Ryan testified that Brienna did not disclose the extent of B.R.K.'s medical problems to him and also tried to alienate him from B.R.K. She changed B.R.K.'s last name to her maiden name when she registered him for school.

**Material and Substantial Change**

A trial court's determination as to whether a material and substantial change of circumstances has occurred is not guided by rigid rules and is fact specific. *Zeifman*, 212 S.W3d at 593. By his motion to modify, Ryan alleged that since entry of the order sought to be modified, Brienna had engaged in inappropriate conduct with D.V., a minor. He further alleged that Brienna's unsupervised contact with B.R.K. would endanger his physical health and emotional well-being. Ryan testified that on one occasion when he took B.R.K. home, he found D.V. in Brienna's home wearing only boxers. Ryan's father also testified

5

that on one occasion when he arrived at Brienna's house to pick up B.R.K. for a visit, he observed D.V. wearing only his underwear.

Brienna testified that in 2004, when she was twenty-three years old, she engaged in sexual relations with D.V., a fourteen year old boy, for several months while he was staying in her home. Brienna's conduct was investigated by law enforcement authorities.

Brienna sought treatment by a sex offender therapist who concluded she was an appropriate candidate for outpatient treatment. After performing a clinical interview, he formed the opinion that she posed a low risk of re-offending because she showed no persistent sexual interest in boys and he believed her affair with D.V. was a consequence of her emotional needs.

Ryan testified that at about the time of Brienna's involvement with D.V., B.R.K., who was then six years old, began exhibiting signs of sexual curiosity. Ryan testified that B.R.K. became aggressive toward his stepdaughter and that he warned Brienna of B.R.K.'s behavior. Brienna acknowledged that Ryan had expressed his concerns to her about B.R.K.'s sexual curiosity. She testified that on one occasion while she and B.R.K. were visiting in her mother's home, she noticed B.R.K. and one of her mother's twelve year old foster girls walk out of a closet. She became suspicious and questioned B.R.K. about the incident, after which she learned they had engaged in oral sex.

Based on these facts, we cannot say that the trial court acted without reference to any guiding rules and principles in finding, by a preponderance of the evidence, that the circumstances of B.R.K., or Brienna, had materially and substantially changed since rendition of the March 5, 2001 order.

**Best Interest of the Child**

To determine the best interest of the child, we apply a non-exhaustive list of considerations. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). They include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals involved, the programs available to those individuals to promote the best interest of the child, the plans for the child by these individuals, the stability of the home, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and any excuse for the acts or omissions of the parent. *Id.*

Brienna relies on *Schwartz v. Jacob*, 394 S.W.2d 15, 18 (Tex.Civ.App.–Houston 1965, writ ref'd n.r.e.), to support her contention that her sexual indiscretion is irrelevant to a determination of B.R.K.'s best interests. In *Schwartz*, prior to divorce, the mother participated in sexual indiscretions away from her children. There was no indication the children knew of the mother's conduct. *Id.* at 18. Brienna, however, engaged in inappropriate sexual relations with a minor which is classified as a felony. *See* Tex. Pen. Code Ann. § 22.011(a)(2) & (f) (Vernon Supp. 2006). Because of the potential of arrest,

7

prosecution, incarceration, or probation, evidence of potential felony conduct may establish a material change in circumstances such that modification of conservatorship is in a child's best interest. *See In re M.R.,* 975 S.W.2d 51, 55 (Tex.App.–San Antonio 1998, pet. denied). *See also In re K.L.R.,* 162 S.W.3d 291, 305 (Tex.App.–Tyler 2005, no pet.). We conclude *Schwartz* does not apply to Brienna's situation.

Ryan testified he has a good job with regular hours and a stable home. He is married and has a young son and stepdaughter. His wife does not work outside the home. Although he recognizes that B.R.K. has serious health issues, he testified that B.R.K. does not exhibit serious symptoms while in his home and under his care.

Brienna's status as a foster caregiver was terminated after her sexual conduct with a minor was investigated. At the time of trial, she testified she had recently begun employment at a convenience store. The number of hours worked per week vary as well as the shifts she works, which range between six in the morning until midnight.

Several witnesses described Brienna's home as "filthy" and "dirty" with pet feces on the floor. Ryan testified that medications were left unlocked, there were moldy dishes, and described an odor that "smelled like pee" in the home. Ryan's mother testified she had been in B.R.K.'s home many times and had observed open prescription bottles on the table, clutter, trash, and an odor of "B. O." and "dog poop."

Nicole Sikes, a friend to both Brienna and Ryan, testified Brienna's home was "just filthy," with clothes on the floor, and dirty dishes in the sink. She also testified that Brienna dressed foster children in clothes she gathered off the floor. According to Sikes, the foster children usually cleaned Brienna's home prior to an agency inspection. Ryan likewise testified that he and his mother helped clean Brienna's home several times prior to inspections out of fear that B.R.K. might be removed from the home.

Not all testimony regarding Brienna was negative. A registered nurse who administered intravenous immunoglobulin to B.R.K. in Brienna's home in 2001 testified the home was "cute" and that B.R.K. had a comfortable room. She added that medical supplies were properly kept. A close friend of Brienna's testified Brienna was very attentive to B.R.K.'s needs and she did not observe any unsafe or unsanitary conditions.

An employee of the Texas Department of Family and Protective Services testified she had investigated Brienna and her mother for a complaint involving B.R.K.'s molestation while under their care. The matter was disposed of as negligent supervision. Another investigator with the Department testified she had investigated Brienna for an allegation of medical neglect of B.R.K., but found none. During her investigation, she researched Brienna's history and found at least three other investigations which were disposed of with no abuse or neglect found.

According to medical records, B.R.K.'s latest assessment by his pulmonary specialist, Dr. Steven Copenhaver, was on June 24, 2005. Dr. Copenhaver concluded in

his written report that B.R.K. should continue his medication for treatment of asthma, seasonal allergies, and sinusitis. He also noted in his report that GERD had been controlled with medication, but recently there was "poor control." He recommended continuation of the medication and also recommended an appointment with another doctor to discuss the possibility of Nissen Fundoplication (reflux surgery).

Dr. Giang Nguyen, B.R.K.'s primary care doctor, began treating B.R.K. in October 2002, but at the time of trial had not seen him for approximately five months. He testified to B.R.K.'s extensive medical problems including GERD. He acknowledged that GERD is aggravated by stress and that it is possible for a patient not to display reflux symptoms when stress is not present.

Ryan testified he suspected Brienna was not properly administering B.R.K.'s medications and began counting the number of pills B.R.K. brought with him during visitation periods. Brienna explained the discrepancy by saying that she had extra pills from B.R.K.'s hospital stays. She also claimed that she had extra pills due to a change in recommended dosage.

The evidence further established that given B.R.K.'s medical condition, his environment while living with Brienna was not conducive to his health. Ryan demonstrated that B.R.K.'s symptoms were greatly reduced while B.R.K. was under his care. Applying the *Holley* factors, we conclude the trial court's decision regarding B.R.K.'s best interest was not an abuse of discretion. The evidence presented supporting the trial court's decision was

of a substantive and probative character. Accordingly, we find no abuse of discretion in the trial court's decision to designate Ryan as the primary conservator with the exclusive right to determine B.R.K.'s residence. Issue one is overruled.

By her second issue, Brienna contends the trial court erred in not granting a new trial based on newly discovered evidence. We disagree. A trial court's ruling on a motion for new trial based on newly discovered evidence is reviewed for abuse of discretion. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 452 (Tex. 1997). A party seeking a new trial on the ground of newly discovered evidence must demonstrate (1) the evidence has come to his knowledge since the trial; (2) it was not owing to a want of due diligence that it did not come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce a different result if a new trial was granted. *In re C.Z.B.*, 151 S.W.3d 627, 632 (Tex.App.–San Antonio 2004, no pet.).

The hearing on the motion to modify concluded on September 1, 2005, and the trial court's modification order was signed on October 11, 2005. Brienna filed a motion for new trial on October 19, 2005, alleging that Ryan's refusal to allow a surgical reflux correction for B.R.K. scheduled for October 7 is "evidence that would probably have changed the result." Attached to the motion for new trial were (1) Dr. Nguyen's trial testimony; (2) B.R.K.'s medical records which had been introduced at trial; (3) a letter from one of B.R.K.'s doctors from Dallas, dated November 5, 2004, which although not introduced at trial, was available at that time; (4) Brienna's affidavit which contains information cumulative of her

11

trial testimony; and (5) an e-mail from Ryan to Brienna dated October 3, 2005, in which Ryan explained his reasons for refusing the reflux surgery a second time.

Although Ryan e-mailed Brienna after the modification hearing occurred, his reasons for cancelling B.R.K.'s reflux surgery a second time reverberate his trial testimony. During the hearing, Ryan explained that B.R.K. did not experience serious reflux symptoms while in his care and that he wanted the condition "double checked" before considering a serious surgical procedure. He also testified he had never been contacted by any of B.R.K.'s doctors nor questioned about B.R.K.'s condition. We conclude Brienna failed to satisfy the requirements for being granted a new trial based on newly discovered evidence and hold the trial court did not abuse its discretion in denying her motion. Issue two is overruled.

Accordingly the trial court's modification order is affirmed.


Patrick A. Pirtle
Justice

12