NO. 07-08-0328-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 22, 2008

______________________________


IN THE INTEREST OF J.R.U. AND C.L.U., CHILDREN

_________________________________

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 65,381-D; HONORABLE DON EMERSON, JUDGE

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Heath Upshaw, filed a pro se notice of appeal challenging the trial courtâs
order modifying and clarifying the parent-child relationship. Because Upshawâs notice of
appeal was untimely filed, we dismiss for want of jurisdiction.
Â Â Â Â Â Â Â Â Â Â The timely filing of a notice of appeal is jurisdictional. See Tex. R. App. P. 25.1(b). 
A notice of appeal must be filed within thirty days after an appealable order is signed. See 
Tex. R. App. P. 26.1. When a party files a notice of appeal with the trial court within fifteen
days after the deadline for filing the notice, and files in the appellate court a motion
complying with Rule 10.5(b), including a recitation of the facts relied on to reasonably
explain the need for an extension, the appellate court may extend the time to file the notice
of appeal. See Tex. R. App. P. 26.3. The Supreme Court has held that the motion for
extension of time is necessarily implied when an appellant, acting in good faith, takes the
necessary steps to perfect an appeal. See Verburgt v. Dorner, 959 S.W.2d 615, 616-17
(Tex. 1997). Nevertheless, it is still necessary for an appellant to provide this Court with
a âreasonable explanationâ for the need for an extension. See Jones v. City of Houston,
976 S.W.2d 676, 677 (Tex. 1998). 
Â Â Â Â Â Â Â Â Â Â Â In this case, the trial courtâs order was signed on July 2, 2008, making the notice
of appeal due no later than August 1, 2008. Upshaw filed his notice of appeal on August
5, 2008. Even though Upshawâs notice of appeal was not timely filed, because it was filed
within the fifteen days of its original due date, we implied the filing of a motion for extension
of time to file notice of appeal. By letter dated September 17, 2008, this Court requested
Upshaw to provide a reasonable explanation, in writing, on or before October 10, 2008, as
to why an extension of time was necessary. At the same time, we further admonished
Upshaw that failure to do so might result in dismissal of his appeal. See Tex. R. App. P.
42.3. Having been provided a reasonable opportunity to do so, Upshaw has failed to
comply with our request or otherwise provide a reasonable explanation for the need for an
extension. 
Â Â Â Â Â Â Â Â Â Â Consequently, this appeal is dismissed for want of jurisdiction. Our disposition
renders moot an extension of time filed by the court reporter in which to file the reporterâs
record. 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice








al history. When he was three months old, he was
hospitalized for failure to thrive. In approximately six years, he was hospitalized
approximately forty times, including several visits to specialists in Dallas. He suffers from
asthma, allergies, pneumonia, lung problems, gastroesophageal reflux disease (GERD),
and immune disorder. 

 Brienna testified she has received specialized training to treat B.R.K. should he suffer
an asthma attack, and she is aware of B.R.K.'s nutritional needs in order to control his reflux
problems. Until shortly before the hearing, Brienna did not work outside the home. Instead,
she worked as a licensed foster caregiver in order to remain at home to care for B.R.K. In
caring for him, Brienna receives help from her mother, who was also a licensed foster
caregiver. 

 Ryan is married and has another son and a stepdaughter. He works regular hours
as a machinist. He has no specialized training regarding B.R.K.'s medical problems. 
Except for a few instances, Ryan did not accompany B.R.K. to doctor's appointments or
hospital visits. Ryan testified that Brienna did not disclose the extent of B.R.K.'s medical
problems to him and also tried to alienate him from B.R.K. She changed B.R.K.'s last name
to her maiden name when she registered him for school.

Material and Substantial Change


 A trial court's determination as to whether a material and substantial change of
circumstances has occurred is not guided by rigid rules and is fact specific. Zeifman, 212
S.W3d at 593. By his motion to modify, Ryan alleged that since entry of the order sought
to be modified, Brienna had engaged in inappropriate conduct with D.V., a minor. He
further alleged that Brienna's unsupervised contact with B.R.K. would endanger his physical
health and emotional well-being. Ryan testified that on one occasion when he took B.R.K.
home, he found D.V. in Brienna's home wearing only boxers. Ryan's father also testified
that on one occasion when he arrived at Brienna's house to pick up B.R.K. for a visit, he
observed D.V. wearing only his underwear. 

 Brienna testified that in 2004, when she was twenty-three years old, she engaged
in sexual relations with D.V., a fourteen year old boy, for several months while he was
staying in her home. Brienna's conduct was investigated by law enforcement authorities. 

 Brienna sought treatment by a sex offender therapist who concluded she was an
appropriate candidate for outpatient treatment. After performing a clinical interview, he
formed the opinion that she posed a low risk of re-offending because she showed no
persistent sexual interest in boys and he believed her affair with D.V. was a consequence
of her emotional needs. 

 Ryan testified that at about the time of Brienna's involvement with D.V., B.R.K., who
was then six years old, began exhibiting signs of sexual curiosity. Ryan testified that B.R.K.
became aggressive toward his stepdaughter and that he warned Brienna of B.R.K.'s
behavior. Brienna acknowledged that Ryan had expressed his concerns to her about
B.R.K.'s sexual curiosity. She testified that on one occasion while she and B.R.K. were
visiting in her mother's home, she noticed B.R.K. and one of her mother's twelve year old
foster girls walk out of a closet. She became suspicious and questioned B.R.K. about the
incident, after which she learned they had engaged in oral sex. 

 Based on these facts, we cannot say that the trial court acted without reference to
any guiding rules and principles in finding, by a preponderance of the evidence, that the
circumstances of B.R.K., or Brienna, had materially and substantially changed since
rendition of the March 5, 2001 order. 

Best Interest of the Child


 To determine the best interest of the child, we apply a non-exhaustive list of
considerations. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). They include
the desires of the child, the emotional and physical needs of the child now and in the future,
the emotional and physical danger to the child now and in the future, the parental abilities
of the individuals involved, the programs available to those individuals to promote the best
interest of the child, the plans for the child by these individuals, the stability of the home, the
acts or omissions of the parent which may indicate that the existing parent-child relationship
is not proper, and any excuse for the acts or omissions of the parent. Id.

 Brienna relies on Schwartz v. Jacob, 394 S.W.2d 15, 18 (Tex.Civ.App.-Houston
1965, writ ref'd n.r.e.), to support her contention that her sexual indiscretion is irrelevant to
a determination of B.R.K.'s best interests. In Schwartz, prior to divorce, the mother
participated in sexual indiscretions away from her children. There was no indication the
children knew of the mother's conduct. Id. at 18. Brienna, however, engaged in
inappropriate sexual relations with a minor which is classified as a felony. See Tex. Pen.
Code Ann. § 22.011(a)(2) & (f) (Vernon Supp. 2006). Because of the potential of arrest,
prosecution, incarceration, or probation, evidence of potential felony conduct may establish
a material change in circumstances such that modification of conservatorship is in a child's
best interest. See In re M.R., 975 S.W.2d 51, 55 (Tex.App.-San Antonio 1998, pet.
denied). See also In re K.L.R., 162 S.W.3d 291, 305 (Tex.App.-Tyler 2005, no pet.). We
conclude Schwartz does not apply to Brienna's situation.

 Ryan testified he has a good job with regular hours and a stable home. He is
married and has a young son and stepdaughter. His wife does not work outside the home. 
Although he recognizes that B.R.K. has serious health issues, he testified that B.R.K. does
not exhibit serious symptoms while in his home and under his care.

 Brienna's status as a foster caregiver was terminated after her sexual conduct with
a minor was investigated. At the time of trial, she testified she had recently begun
employment at a convenience store. The number of hours worked per week vary as well
as the shifts she works, which range between six in the morning until midnight.

 Several witnesses described Brienna's home as "filthy" and "dirty" with pet feces on
the floor. Ryan testified that medications were left unlocked, there were moldy dishes, and
described an odor that "smelled like pee" in the home. Ryan's mother testified she had
been in B.R.K.'s home many times and had observed open prescription bottles on the table,
clutter, trash, and an odor of "B. O." and "dog poop." 

 Nicole Sikes, a friend to both Brienna and Ryan, testified Brienna's home was "just
filthy," with clothes on the floor, and dirty dishes in the sink. She also testified that Brienna
dressed foster children in clothes she gathered off the floor. According to Sikes, the foster
children usually cleaned Brienna's home prior to an agency inspection. Ryan likewise
testified that he and his mother helped clean Brienna's home several times prior to
inspections out of fear that B.R.K. might be removed from the home. 

 Not all testimony regarding Brienna was negative. A registered nurse who
administered intravenous immunoglobulin to B.R.K. in Brienna's home in 2001 testified the
home was "cute" and that B.R.K. had a comfortable room. She added that medical supplies
were properly kept. A close friend of Brienna's testified Brienna was very attentive to
B.R.K.'s needs and she did not observe any unsafe or unsanitary conditions.

 An employee of the Texas Department of Family and Protective Services testified
she had investigated Brienna and her mother for a complaint involving B.R.K.'s molestation
while under their care. The matter was disposed of as negligent supervision. Another
investigator with the Department testified she had investigated Brienna for an allegation of
medical neglect of B.R.K., but found none. During her investigation, she researched
Brienna's history and found at least three other investigations which were disposed of with
no abuse or neglect found.

 According to medical records, B.R.K.'s latest assessment by his pulmonary
specialist, Dr. Steven Copenhaver, was on June 24, 2005. Dr. Copenhaver concluded in
his written report that B.R.K. should continue his medication for treatment of asthma,
seasonal allergies, and sinusitis. He also noted in his report that GERD had been controlled
with medication, but recently there was "poor control." He recommended continuation of
the medication and also recommended an appointment with another doctor to discuss the
possibility of Nissen Fundoplication (reflux surgery).

 Dr. Giang Nguyen, B.R.K.'s primary care doctor, began treating B.R.K. in October
2002, but at the time of trial had not seen him for approximately five months. He testified
to B.R.K.'s extensive medical problems including GERD. He acknowledged that GERD is
aggravated by stress and that it is possible for a patient not to display reflux symptoms
when stress is not present. 

 Ryan testified he suspected Brienna was not properly administering B.R.K.'s
medications and began counting the number of pills B.R.K. brought with him during
visitation periods. Brienna explained the discrepancy by saying that she had extra pills from
B.R.K.'s hospital stays. She also claimed that she had extra pills due to a change in
recommended dosage. 

 The evidence further established that given B.R.K.'s medical condition, his
environment while living with Brienna was not conducive to his health. Ryan demonstrated
that B.R.K.'s symptoms were greatly reduced while B.R.K. was under his care. Applying
the Holley factors, we conclude the trial court's decision regarding B.R.K.'s best interest was
not an abuse of discretion. The evidence presented supporting the trial court's decision was
of a substantive and probative character. Accordingly, we find no abuse of discretion in the
trial court's decision to designate Ryan as the primary conservator with the exclusive right
to determine B.R.K.'s residence. Issue one is overruled.

 By her second issue, Brienna contends the trial court erred in not granting a new trial
based on newly discovered evidence. We disagree. A trial court's ruling on a motion for
new trial based on newly discovered evidence is reviewed for abuse of discretion. State
Farm Lloyds v. Nicolau, 951 S.W.2d 444, 452 (Tex. 1997). A party seeking a new trial on
the ground of newly discovered evidence must demonstrate (1) the evidence has come to
his knowledge since the trial; (2) it was not owing to a want of due diligence that it did not
come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce
a different result if a new trial was granted. In re C.Z.B., 151 S.W.3d 627, 632
(Tex.App.-San Antonio 2004, no pet.).

 The hearing on the motion to modify concluded on September 1, 2005, and the trial
court's modification order was signed on October 11, 2005. Brienna filed a motion for new
trial on October 19, 2005, alleging that Ryan's refusal to allow a surgical reflux correction
for B.R.K. scheduled for October 7 is "evidence that would probably have changed the
result." Attached to the motion for new trial were (1) Dr. Nguyen's trial testimony; (2)
B.R.K.'s medical records which had been introduced at trial; (3) a letter from one of B.R.K.'s
doctors from Dallas, dated November 5, 2004, which although not introduced at trial, was
available at that time; (4) Brienna's affidavit which contains information cumulative of her
trial testimony; and (5) an e-mail from Ryan to Brienna dated October 3, 2005, in which
Ryan explained his reasons for refusing the reflux surgery a second time.

 Although Ryan e-mailed Brienna after the modification hearing occurred, his reasons
for cancelling B.R.K.'s reflux surgery a second time reverberate his trial testimony. During
the hearing, Ryan explained that B.R.K. did not experience serious reflux symptoms while
in his care and that he wanted the condition "double checked" before considering a serious
surgical procedure. He also testified he had never been contacted by any of B.R.K.'s
doctors nor questioned about B.R.K.'s condition. We conclude Brienna failed to satisfy the
requirements for being granted a new trial based on newly discovered evidence and hold
the trial court did not abuse its discretion in denying her motion. Issue two is overruled.

 Accordingly the trial court's modification order is affirmed.


 Patrick A. Pirtle

 Justice


 
1. Unless otherwise designated, all section references are to the Texas Family Code
Annotated (Vernon 2002).